1997 ND 155

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Curtis v. HERRICK, Defendant and Appellant.**

**Criminal Nos. 970019–970021.**

Supreme Court of North Dakota.

Aug. 11, 1997.

Frederick R. Fremgen, Assistant State's Attorney, Jamestown, for plaintiff and appellee.

Robin L. Olson, Olson Law Office, Grand Forks, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Curtis Herrick appealed from the trial court's judgment and conviction following his conditional plea of guilty to possession of a controlled substance with intent to manufacture, possession of a controlled substance, and possession of drug paraphernalia. Herrick contends the trial court erred in denying his motion to suppress. We reverse and remand.

[¶ 2] In February 1995, Officer LeRoy Gross of the Jamestown, North Dakota, Police Department searched garbage cans located near a service alley at the back of Herrick's property. Gross was a member of the Department's Drug Task Force. The cans were placed near the alley, roughly three feet from the alley's edge, on Herrick's property. There were foot prints between the house and the cans. In searching the cans, Gross discovered a paper clip with residue on it, a seed, and a stem. It was later determined the stem, seed, and residue were all marijuana, but the seed was incapable of germination.

[¶ 3] Gross and Corrinne Becker of the Stutsman County Narcotics Task Force conducted a subsequent search of Herrick's garbage can in January 1996. This time, the cans were about four feet from the alley and there were two plastic bags tied in the can. In one bag, Gross found bent metal wires, two stems, and four seeds. Gross also found a handwritten note describing ways to grow marijuana.

[¶ 4] Using the information from the two searches, Becker applied for a warrant to search Herrick's house. In applying for the warrant, the magistrate asked Becker if she wanted a "no-knock," nighttime warrant, to which Becker responded yes. When questioned during an evidentiary hearing on the motion to suppress why she wanted a no-knock warrant, Becker stated a no-knock warrant was needed because "[m]arijuana is an easily disposed of item when it's dry, when it's processed. It could easily be flushed down a toilet. We had evidence that there was marijuana inside of his house based on the garbage we found, leading me to believe that there was marijuana inside the house . . . ."

[¶ 5] The no-knock warrant was ·executed at Herrick's house on January 2, 1996. Officer Gross knocked on the door, waited three seconds, and then broke the door open with a battering ram. Herrick was in the house at the time. In searching Herrick's house, the officers found marijuana, marijuana seeds and stems, equipment used for indoor horticulture, a book entitled *Indoor Marijuana Horticulture,* and several items of drug paraphernalia.

[¶ 6] Herrick moved to suppress the evidence, claiming the search of his garbage cans and the issuance of the no-knock warrant violated his right against an unreasonable search and seizure. Herrick also argued the warrant was issued without probable cause and was signed by a biased magistrate. The trial court denied the motion, and Herrick entered a conditional guilty plea while preserving the issues argued in his motion to suppress for this appeal.

[¶ 7] We do not reverse a trial court's decision to deny a motion to suppress if "'after conflicts in testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence.'" *State v. Erbele,* 554 N.W.2d 448, 450 (N.D.1996) (quoting *State v. Glaesman,* 545 N.W.2d 178, 181 (N.D.1996)).

## Garbage Can Search

[¶ 8] Herrick argues the search of his garbage cans violated the Fourth Amendment of the United States Constitution and Article I Section 8 of the North Dakota Constitution. Herrick argues the garbage cans were on his property and not set out for pickup, and thus, he still had an expectation of privacy as to the contents of these cans.

[¶ 9] In *State v. Rydberg,* 519 N.W.2d 306, 310 (N.D.1994), we stated "placing . . . garbage [cans] on or against [a] public alley, where it [is] exposed to the general public, and with the express purpose of abandoning it to the trash collector . . . waive[s] any privacy interest . . . in the garbage." Under

the North Dakota Constitution, Herrick must have a " 'subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable' " for his garbage to be protected. *State v. Carriere*, 545 N.W.2d 773, 775 (N.D.1996) (quoting *Rydberg*, 519 N.W.2d at 309). *See California v. Greenwood*, 486 U.S. 35, 40–41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30, 36–37 (1988) (warrantless searches of garbage cans set out for disposal are constitutionally valid under the Fourth Amendment of the United States Constitution); *State v. Ronngren*, 361 N.W.2d 224, 228 (N.D.1985) (defendant had no reasonable expectation of privacy in garbage after a dog carried garbage onto a neighbor's property).

[¶ 10] The record shows the cans were roughly between two and six feet from the edge of the public alley. We will not engage in measuring expectations of privacy with a ruler. It is apparent Herrick placed the cans near the alley in an area where unknown garbage collectors picked them up and where other unknown people could rummage through the cans. Moreover, it appears when Herrick placed items in the garbage cans, he considered these items as trash and intended them to be picked up by the garbage collectors. Under *Rydberg*, Herrick's expectation of privacy is not objectively reasonable and he waived any expectation of privacy he had in the garbage.

### Neutral and Detached Magistrate

[¶ 11] Herrick contends the magistrate, in issuing the search warrant, demonstrated bias when he asked Becker if she wanted a no-knock, nighttime warrant. A warrant must be issued by a detached, neutral magistrate. Rule 41, N.D.R.Crim.P.; *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984); *Ronngren*, 361 N.W.2d at 229. From the testimony and warrant application form, it appears the issuing magistrate was merely trying to move the application process along when he asked Becker if she wanted a no-knock warrant. There is nothing on this record demonstrating the magistrate was biased or prejudiced against Herrick.

### Probable Cause

[¶ 12] Whether there is probable cause to issue a warrant is a question of law. *State v. Winkler*, 552 N.W.2d 347, 353 (N.D. 1996). We review whether a warrant is issued with probable cause under the totality-of-the-circumstances approach. *Id.* at 353 (citing *Rydberg*, 519 N.W.2d at 308). The task of the issuing magistrate "is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place." *Rydberg*, 519 N.W.2d at 308.

[¶ 13] Herrick maintains probable cause did not exist to issue the warrant. He states it is possible someone else could have dropped the seeds and stems into his garbage on both occasions. Furthermore, he argues while items found in his garbage indicate use, it would be mere speculation on the officer's part to believe any drugs or drug paraphernalia would be found in Herrick's home. But,

> " '[p]robable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place.' "

*Rydberg*, 519 N.W.2d at 308 (quoting *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988)).

[¶ 14] In *State v. Johnson*, 531 N.W.2d 275, 278 (N.D.1995), we thought it "reasonable for the magistrate to have concluded, from the presence of marijuana seeds in [defendant's] garbage bag, that more marijuana was probably located inside his house."

[¶ 15] Becker, in applying for the search warrant, stated probable cause for the search was based on the stems, seeds, and paraphernalia during the two searches of Herrick's garbage cans. The application for the search warrant was made on the same

day as the second search. The officers had probable cause for applying for the search warrant under the standard described in *Ringquist.*

### No–Knock Warrant

[¶ 16] Herrick argues the use of the no-knock warrant violated his right against unlawful search and seizure because it was not reasonable to issue a no-knock warrant under the circumstances.

[¶ 17] Both the Fourth Amendment of the United States Constitution and Article I Section 8 of the North Dakota Constitution require all searches and seizures be reasonable. An element of this rule is officers entering a dwelling must knock and announce their presence. *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995). However the rule of reasonableness is flexible, and, for law enforcement interests, such as the safety of law enforcement officers and the integrity of evidence, may not require officers to knock and announce prior to entry. *Id.* at 934–36, 115 S.Ct. at 1918; *State v. Knudson,* 499 N.W.2d 872, 876 (N.D.1993). In situations where a threat of physical violence or possible destruction of evidence may exist, officers may validly execute a no-knock warrant. *Wilson,* 514 U.S. at 934–36, 115 S.Ct. at 1918–1919; *Knudson,* 499 N.W.2d at 876.

[¶ 18] Subsequent to the issuance of the warrant in this case, the United States Supreme Court again considered the application of no-knock warrants in drug cases. *Richards v. Wisconsin,* —— U.S. ——, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). The case was appealed from the Wisconsin Supreme Court, which held

"exigent circumstances are always present in the execution of search warrants involving felonious drug delivery. The public interests in these circumstances far outweigh the minimal privacy interests of the occupants of the dwelling for which a search warrant has already been issued.... *[P]olice are not required to ad-*

*here to the rule of announcement when executing a search warrant involving felonious drug delivery."*

*State v. Richards,* 201 Wis.2d 845, 549 N.W.2d 218, 227 (1996) (emphasis added). The United States Supreme Court recognized the need for a no-knock warrant in drug cases, because these cases frequently involve the threat of physical violence and the likelihood of the destruction of evidence, but did not agree with the Wisconsin Court's per se rule:

"[W]hile drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree.

\* \* \*

Thus ... in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement."

*Richards,* —— U.S. at ——, 117 S.Ct. at 1421. Under *Richards,* law enforcement officials must have a reasonable suspicion the announcement of their presence would jeopardize the search to justify the use of a no-knock warrant. *Id.* This burden, requiring a balance between legitimate law enforcement interests and the privacy interests of the individual, "is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id.* at ——, 117 S.Ct. at 1422.

[¶ 19] The State argues reasonable suspicion the evidence might be destroyed or the officers are in danger is all that is necessary for a no-knock warrant. But, the clear language of section 19–03.1–32(3), N.D.C.C., requires "probable cause" for the issuance of a no-knock warrant. Our decisions on the issuance of no-knock warrants speak in terms of probable cause. *See, e.g., State v. Borden,* 316 N.W.2d 93, 96 (N.D.1982); *State v. Loucks,* 209 N.W.2d 772, 776–77 (N.D.1973). Rule 41(c), N.D.R.Crim.

P., which together with section 19–03.1–32(2), N.D.C.C., govern the issuance of nighttime warrants, uses the term "reasonable cause shown" and we have construed this term synonymously with probable cause for the purpose of issuing a nighttime warrant under section 19–03.1–32(2). *Knudson,* 499 N.W.2d at 875. Insofar as there may be a conflict between section 29–29–08, N.D.C.C., a more general statute governing no-knock warrants, and section 19–03.1–32, N.D.C.C., the latter prevails with respect to offenses involving controlled substances. *Loucks,* 209 N.W.2d at 777. It is now axiomatic that the state may grant greater but not lesser protections than the United States Constitution. *State v. Matthews,* 216 N.W.2d 90, 99 (N.D.1974). Our legislature has done so. Probable cause is required for issuance of a no-knock warrant under section 19–03.1–32, N.D.C.C.

[¶ 20] Under North Dakota's Controlled Substances Act, N.D.C.C. Chapter 19–03.1, an officer

> "authorized to execute a search warrant, without notice of the officer's authority and purpose, may break open an outer or inner door or window of a building, or any part of the building, or anything therein, *if the judge or magistrate* issuing the warrant *has probable cause to believe that if such notice were to be given the property sought in the case may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result,* and has included in the warrant a direction that the officer executing it is not required to give such notice. Any officers acting under such warrant, as soon as practicable after entering the premises, shall identify themselves and state the purpose of entering the premises and the authority for doing so." (Emphasis added).

N.D.C.C. § 19–03.1–32(3).

[¶ 21] These statutory provisions are not in conflict with *Richards.* On the issue of no-knock warrants, we have previously stated,

> "[t]he purpose of the no-knock warrant is to protect the safety of law enforcement officers and the integrity of evidence. A no-knock warrant in drug cases is available under this statute, because we have taken judicial notice that those in possession of controlled substances ordinarily are on the alert to destroy the typically easily disposable evidence quickly at the first sign of a law enforcement officer's presence."

*Knudson,* 499 N.W.2d at 876 (citing *Borden,* 316 N.W.2d at 96 and *Loucks,* 209 N.W.2d at 776–77). Insofar as our prior rhetoric approves a per-se rule in drug cases justifying the issuance of no-knock warrants, they are overruled.[1] Mere allegations that drugs are present cannot automatically result in the issuance of a noknock warrant. *See United States v. Moore,* 956 F.2d 843, 850 (8th Cir. 1992) (blanket rule permitting no-knock search warrant in all drug cases, regardless of whether form and quantities suspected to be present can be readily disposed is patently unreasonable).

[¶ 22] The officer applying for the search warrant, when questioned if she sought a no-knock warrant responded yes, stating, "[i]f [Herrick] had forewarning that we were coming in, I think that he would be inclined to destroy any kind of evidence that would link him to the drugs." On the affidavit attached to the search warrant application, the officer listed property to be seized as "Controlled substances, Drug paraphernalia, Financial documents, Lists of associates, Access to vehicles/garages, Phone records/bills, Ledgers/notebooks/documents showing possible orders or sales, Cassette from answering machine, [and] Light bulbs, fertilizer, growing equipment, etc." The officers stated they were looking for a grow operation, not simply for controlled substances reflecting personal use.

---

1. The Court in *Richards v. Wisconsin,* —— U.S. ——, ——, n. 1, 117 S.Ct. 1416, 1420, n. 1, 137 L.Ed.2d 615 (1997) cites several cases, including *State v. Loucks,* 209 N.W.2d 772 (N.D.1973) that predate *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) and "have adopted similar rules, concluding that simple probable cause to search a home for narcotics always allows the police to forego the knock-and-announce requirement."

[¶ 23] On this record, the officer offered no reason for the no-knock warrant other than marijuana was easily disposed of and that Herrick would destroy the evidence if forewarned. The magistrate initiated no further inquiry as to why the officer thought Herrick may dispose of any controlled substances he may have on the premises. The officer did not meet her burden of demonstrating the need of her request for the no-knock warrant. There is no evidence in this record, other than the possible existence of drugs and an explained belief that Herrick would dispose of the evidence if forewarned, demonstrating why the officers needed a no-knock warrant. It is apparent to us the magistrate, relying on the previous decision of this Court, applied a per-se rule comparable to that struck down in *Richards.*

[¶ 24] Although in possession of a no-knock warrant, the officers testified they did knock but waited only 3 seconds before battering in the door. The trial court apparently considered the execution of the warrant as a no-knock warrant and so will we. *See* Wayne R. LaFave, Search and Seizure, § 4.8(c) at 608 (3d. ed.1996) (wait of two to four seconds is inadequate). There is nothing in the record to indicate the officers intended to effectively announce their presence. If there were something in the record to indicate the officers did so intend, like *Richards,* invalidating the issuance of a no-knock warrant under a per-se rule, a last minute decision to force entry cannot rest on an assumption. *United States v. Lucht,* 18 F.3d 541, 551 (8th Cir.1994); *cert. denied,* 513 U.S. 949, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994).

### Remedy

[¶ 25] The State also urges we now embrace what we have often discussed, *State v. Lewis,* 527 N.W.2d 658, 663 (N.D.1995); *see, e.g., Sakellson,* 379 N.W.2d at 784–85, but never adopted, i.e., the "good-faith" exception to the exclusionary rule used in *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984) (good-faith exception to exclusionary rule where officers' reliance on magistrate's determination of probable cause was "objectively reasonable"). The issue was raised by the State in its brief to the trial court on the motion to suppress as part of the issue of whether it was reasonable to issue a no-knock warrant:

> "If the no-knock aspect of the warrant is found void and it is determined that the police did not knock and announce prior to entry, then the police should be allowed a good faith exception to the warrant requirement. In *State v. Sakellson,* the North Dakota Supreme Court discussed its criteria for granting a good faith exception to the warrant requirement. *State v. Sakellson,* 379 N.W.2d 779, 784–85 (N.D. 1985). Essentially, the court required a good faith belief that the conduct was authorized. *Sakellson* at 785. The court explained that the belief must be objectively reasonable and based on an articulable premise sufficient to cause a reasonable, reasonably trained, officer to believe he was acting lawfully. *Id.* In Herrick's case, the officers sought a no-knock warrant for the search of a house they reasonably believed to contain marijuana. The circumstances under which they sought the no-knock warrant would cause a reasonable officer, reasonably trained to believe a no-knock was appropriate. As righteously anticipated, the no-knock was granted. A subsequent execution of a no-knock warrant would have been reasonable in all aspects required by *Sakellson.*"

No response was made to this issue in the trial court. The trial court did not discuss it in the opinion denying the motion to suppress and, on appeal, no response was made by Herrick to the State's brief requesting application of the rule if we find the warrant invalid.

[¶ 26] Although we discussed the good-faith exception in *Sakellson,* we have never adopted it nor did the Court prescribe "its criteria for granting a good faith exception to the warrant requirement." The issue of whether or not to adopt the good faith rule and, if it is adopted whether to apply it in a

specific case are separate issues. *Sakellson* discussed application but neither it nor our other cases, *e.g., Lewis,* discuss whether we should or should not recognize a good-faith exception to the exclusionary rule. We decline to decide the question at this time without adequate briefing, including discussion of the merits or demerits of recognizing such an exception generally.

[¶ 27] In view of the fact we have reversed under *Richards,* we now remand to the trial court for consideration of whether or not a good-faith exception to the exclusionary rule should be applied in this case. If, after the decision of the trial court, a further appeal is taken raising the issue of the good-faith exception, the parties are instructed to brief the question of whether we should recognize a good-faith exception and, if so, whether it should be applied in this case.

[¶ 28] The judgment of conviction and the order denying suppression are reversed and the matter is remanded for further proceedings consistent with this opinion.

[¶ 29] SANDSTROM, NEUMANN, and MARING, JJ., concur.

MESCHKE, Justice, concurring and dissenting.

[¶ 30] I join in the conclusions of the majority opinion that the garbage-can search did not violate Herrick's constitutional right to privacy; the search warrant was issued by a neutral and detached magistrate; the officers had probable cause for a warrant to search; and a probable-cause reason is required to authorize a no-knock search warrant. I agree there was no evidence to justify a no-knock warrant in this case. Thus, I agree this "automatic" no-knock authorization was unreasonable and thus unconstitutional. Unlike circumstances in *Richards v. Wisconsin,* there were no circumstances at the time of the execution of this warrant to justify an abrupt entry without the need to comply with knock-and-announce requirements.

[¶ 31] However, I would reverse and direct suppression. Therefore, I respectfully dissent from the remand to consider whether a good-faith exception to the constitution should be applied in this case.

[¶ 32] The majority in *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420, clarified:

We do not suggest ... that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms.

The *Leon* majority explained:

[I]t is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

*Id.* at 922–23, 104 S.Ct. at 3420 (footnote omitted). Here, the officers had no reasonable grounds to seek a no-knock warrant, and their application for the warrant was "so lacking in indicia of probable cause [for a no-knock warrant] as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. at 3421. Essentially, I agree with 1 LaFave, *Search and Seizure,* § 1.3(f), pp. 70–71 (1996), that "Fourth Amendment violations relating to *execution* of the warrant are unaffected by *Leon* ...."

[¶ 33] Because I would direct suppression, rather than ponder a good-faith exception to the constitutional canon against unreasonable searches, I respectfully dissent.

[¶ 34] Herbert L. Meschke