1997 ND 175

**STATE of North Dakota, Plaintiff
and Appellee,**

**v.**

**Jeff HAGE, Defendant and Appellant.**

**Criminal No. 970036.**

Supreme Court of North Dakota.

Sept. 8, 1997.

Ralph A. Vinje (argued), of Vinje Law Firm, Bismarck, for defendant and appellant.

Merle A. Torkelson (argued), State's Attorney, Washburn, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Jeff Hage appeals from the criminal judgment entered upon a jury verdict finding him guilty of possession of marijuana, methamphetamine, and drug paraphernalia. Because there is probable cause to support the search warrant issued by the magistrate, we affirm the judgment of the trial court.

I.

[¶ 2] Hage's conviction stems from evidence seized by narcotics agents during a May 1995 search of Jeff and Suzette Hage's rural Butte premises in McLean County. A search warrant for the persons and premises

of Jeff and Suzette Hage was issued on May 27, 1995, by the Honorable James M. Vukelic after application was made by Deputy Robert Browne, a narcotics agent with the South Sakakawea Narcotics Task Force. Deputy Browne and other agents executed the warrant on May 28, 1995. In support of the search warrant application, Deputy Browne filed an Affidavit and Affidavit Supplement, which provide the information relevant to our determination of probable cause.

[¶ 3] Deputy Browne states in his Affidavit that DEA Special Agent Michael Cashman contacted North Dakota drug agents regarding information received during a San Diego drug investigation. On February 1, 1995, a federal search warrant was executed at the Donald Blair Hill residence in San Diego, California, and the Hill residence was searched. During this search, a methamphetamine lab was discovered and taken down. At the time of the search, Robert Willis was present at the Hill residence, but fled the scene.

[¶ 4] After Willis was apprehended by authorities and read his Miranda rights, Willis said he knew of a North Dakota individual who supplied hydriodic acid in exchange for the finished product methamphetamine. Hydriodic acid is known by drug agents to be used in the manufacturing of methamphetamine. Deputy Browne states his training has included knowledge of the chemicals used in the manufacture of methamphetamine. Police searched Willis and found a personal phone book which was seized and examined. The phone book contained the telephone number 701–626–7307 with the name "Jeff" and the letters "ND" next to it. Willis also told authorities that this North Dakota individual had the hydriodic acid buried.

[¶ 5] Deputy Browne states in his Affidavit that the above phone number is assigned to Jeff and Suzette Hage of Butte, North Dakota. Based on this information, the Hages' phone records were obtained by North Dakota authorities and sent to Special Agent Cashman. Agent Cashman's analysis of the phone numbers called from the Hage phone in North Dakota showed that twenty-one of the individuals called were positively tied to known narcotics incidents in the San Diego area. A phone number associated with Robert Willis had been called over 100 times.

[¶ 6] Deputy Browne's Affidavit Supplement states that on February 20, 1995, a confidential informant told Special Agent Cashman he was at the Donald Blair Hill residence during the week of February 14, 1995, to February 20, 1995. This confidential informant reported seeing a vehicle with North Dakota license plates, number EGC160, at the Hill residence during this week. Further investigation by authorities revealed this vehicle was registered to Jeffery or Suzette Hage of Butte, North Dakota. Another confidential informant told Agent Cashman that Donald Blair Hill gets his hydriodic acid from a man in North Dakota who packs and ships gallon containers in coolers.

[¶ 7] Deputy Browne states in his Affidavit Supplement that Special Agent Cashman in his search of the Donald Hill residence found Hill's supply of hydriodic acid hidden in a hole covered with plywood and dirt. Browne further states that approximately three weeks prior to May 27, 1995, Deputy Hultberg of the McLean County Sheriff's Office received similar information from a confidential informant. This informant told Deputy Hultberg that Jeff Hage had dug a hole in his Quonset and covered it with plywood and dirt. Deputy Browne states in his Affidavit Supplement this is "the exact same method that [Donald] Hill had used in California."

[¶ 8] Other information in Deputy Browne's Affidavit includes reports from the Hages' neighbors regarding a large amount of traffic coming and going from the Hage farm, particularly on weekends. Deputy Browne also states that Jeff Hage has an arrest record in California for possession of a controlled substance.

[¶ 9] Using this information, Officer Browne applied for the warrant to search the Hages' persons and premises for controlled substances, including methamphetamine and marijuana, drug paraphernalia, and materials and equipment used in the manufacture of controlled substances. During the search, agents found methamphetamine, marijuana,

and drug paraphernalia. Before trial, Hage brought a motion to suppress the evidence arguing the search warrant was issued without probable cause. The trial court found the magistrate had probable cause to issue the warrant and denied the motion.[1] Hage was subsequently convicted of possession of these items. Hage argues on appeal that Deputy Browne's affidavit was insufficient to support the magistrate's finding of probable cause and that the denial of the suppression motion was, therefore, improper. We disagree.

## II.

[¶ 10] Whether probable cause exists to issue a search warrant is a question of law. *State v. Herrick*, 1997 ND 155, ¶ 12, 567 N.W.2d 336 (citing *State v. Winkler*, 552 N.W.2d 347, 353 (N.D.1996)). In reviewing a search warrant's validity, a trial court determines whether the magistrate granting the warrant had information which established probable cause for the search. *State v. Rydberg*, 519 N.W.2d 306, 308 (N.D.1994); *State v. Frohlich*, 506 N.W.2d 729, 732 (N.D.1993).

> Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place.

*State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988). The magistrate issuing the search warrant "is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place." *Rydberg*, 519 N.W.2d at 308.

[¶ 11] We review the search warrant's validity in the same manner using the "totality-of-the-circumstances" approach, independent of the trial court's determination. *Id.* We consider all information for probable cause together, not in a piecemeal manner, and we test affidavits executed in support of

a warrant in a commonsense and realistic fashion, not in a hypertechnical manner. *State v. Birk*, 484 N.W.2d 834, 837 (N.D. 1992). We give deference to the magistrate's factual findings in determining probable cause, *Frohlich*, 506 N.W.2d at 732, and will not disturb a magistrate's conclusion on appeal if there is a substantial basis for the conclusion that probable cause exists. *State v. Lewis*, 527 N.W.2d 658, 661–62 (N.D.1995) (citing *State v. Dymowski*, 458 N.W.2d 490, 498 (N.D.1990)).

## III.

[¶ 12] Hage argues the search warrant is invalid because it is based on stale information. We have said that "[p]robable cause is not determined by merely counting the number of days between the time of the facts relied upon and the warrant's issuance." *State v. Johnson*, 531 N.W.2d 275, 278 (N.D. 1995) (citing *Ringquist*, 433 N.W.2d at 213). If an affidavit recites facts indicating conduct or activity of a protracted and continuous nature, the passage of time becomes less important to the validity of the probable cause. *Id.*

[¶ 13] The proper inquiry is whether the magistrate, in considering the nature of the crime, the criminal, the thing to be seized, and the place to be searched, could reasonably believe that evidence of criminal activity was probably at the described location. *Id.* Specific times and dates, therefore, are less important where the evidence sought stems from protracted criminal activity. *State v. LaMorie*, 558 N.W.2d 329, 332 (N.D.1996). Drug trafficking is inherently a protracted and continuous activity. *Ringquist*, 433 N.W.2d at 214 (citing *United States v. Bascaro*, 742 F.2d 1335 (11th Cir.1984); *United States v. Tehfe*, 722 F.2d 1114 (3rd Cir.1983)). Drug use can also be a "habituating and continuing offense." *See Johnson*, 531 N.W.2d at 278; *State v. Mische*, 448 N.W.2d 415, 419 (N.D.1989).

[¶ 14] In *Ringquist*, we found the police and the magistrate properly relied upon

---

1. Although the issue was not raised on appeal, we are concerned that the same judge served as both the issuing magistrate and the reviewing trial judge. We encourage a judge in this situation to diligently attempt to have another judge review the issue of probable cause.

information received from two confidential informant interviews, generally pertaining to drug trafficking, which were conducted one to four months before the search warrant was issued. 433 N.W.2d at 214. In this case, Hage was suspected of possessing controlled substances. Much of the information received by North Dakota drug enforcement authorities concerning Jeff Hage resulted after the execution of the federal search warrant at the Hill residence in San Diego on February 1, 1995. Although approximately four months passed between the federal search of the Hill residence and the issuance of the Hage search warrant on May 27, 1995, we conclude the information was not stale and the magistrate could properly rely on such information in its determination of probable cause.

▮ [¶ 15] Hage next argues the issuing magistrate should not have considered information supplied in Deputy Browne's affidavit which was supplied by law enforcement agents, Robert Willis, and confidential informants because there is no showing of reliability. *Rule 41(c)(1)* of the North Dakota Rules of Criminal Procedure provides that "[t]he finding of probable cause may be based upon hearsay evidence in whole or in part." A practical, commonsense determination of probable cause includes examining the veracity and basis of knowledge of persons supplying hearsay information. *See State v. Runck,* 534 N.W.2d 829, 833 (N.D.1995).

▮ [¶ 16] We have presumed the reliability of citizen informants and said their reliability should be evaluated from the nature of their report, their opportunity to observe the matters reported, and the extent to which it can be verified by independent investigation. *Frohlich,* 506 N.W.2d at 733. Furthermore, observations of fellow law enforcement officers involved in a common investigation are also considered a reliable basis in a magistrate's probable cause determination. *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); 2 Wayne R. LaFave, *Search and Seizure* § 3.5(a) (1996). Despite this general rule of police officer reliability, "unnecessarily long chains of information passed through police channels" should be

avoided, and an officer directly involved with the investigation and knowledgeable about the facts should be the affiant on the warrant application. 2 Wayne R. LaFave, *Search and Seizure* § 3.5(a) (1996); *see Bennett v. City of Grand Prairie,* 883 F.2d 400 (5th Cir.1989); *State v. Olsen,* 159 Vt. 448, 620 A.2d 1272 (1992).

▮ [¶ 17] The basis of knowledge and veracity of an informant are relevant, but are flexibly evaluated so that a strength in one aspect can balance deficiencies in the other. *Birk,* 484 N.W.2d at 837 (quoting *Mische,* 448 N.W.2d at 417). Where law enforcement officers, through independent investigation, verify an informant's information, this corroboration lends credence to remaining unverified information. *Id.* We have stated within the context of anonymous informants that an "informant must supply information from which one may conclude that the informant is honest and his information is reliable, or from which the informant's basis of knowledge can be assessed." *Woehlhoff v. State,* 487 N.W.2d 16, 18 (N.D.1992) (citing *State v. Thompson,* 369 N.W.2d 363, 367 (N.D.1985)). "If the informant does not supply the information necessary to evaluate the tip, the police must, through independent investigation, corroborate the tip or develop other sources of information leading to the conclusion that evidence of a crime will probably be found in a particular place." *Id.*

[¶ 18] In the instant case, information in Deputy Browne's Affidavit and Affidavit Supplement regarding Hage's involvement was derived primarily from other law enforcement agents and his own investigation. Although the other enforcement agents received information from "untested" confidential informants, this information was corroborated with named informants and facts revealed through independent investigation.

[¶ 19] Independent investigation verified the vehicle identified by a confidential informant in front of the San Diego Hill residence was registered to Jeff or Suzette Hage. Investigation of the Hages' phone records revealed the frequent calls to Robert Willis, in addition to other San Diego individuals connected to narcotics. Another confidential in-

formant's information regarding a North Dakota individual trading hydriodic acid with Donald Hill was corroborated by statements made by Robert Willis, a named informant. We conclude the magistrate could properly rely on such information given by Deputy Browne as sufficiently reliable for a determination of probable cause.

[¶ 20] Hage argues there is absolutely no evidence that the specific items sought were at the Hage residence. We have said that the evidence before the magistrate must show a nexus between the home to be searched and the contraband sought. *Lewis,* 527 N.W.2d at 662. *See also Frohlich,* 506 N.W.2d at 733; *State v. Erickson,* 496 N.W.2d 555, 559 (N.D.1993). Although the evidence may not provide a direct link to the defendant's residence, "circumstantial evidence alone may establish probable cause" to support a search warrant. *Frohlich,* 506 N.W.2d at 733 (finding a chain of circumstantial links supplied the connection between stolen property and apartment to be searched). This nexus between the residence to be searched and the evidence sought need not be established by direct observation. *Id.* Thus, the location of the contraband may be inferred by connecting circumstances. *Id.* at 734.

[¶ 21] In this case, there is evidence which demonstrates the necessary connection between the contraband sought and the Hages' premises in Butte. During the federal search of the San Diego Hill residence, Agent Cashman found Hill's hydriodic acid buried on the premises and covered with plywood and dirt. Robert Willis informed Agent Cashman that the North Dakota individual supplying hydriodic acid for the production of methamphetamine also kept it buried. On May 27, 1995, Deputy Hultberg revealed that three weeks earlier a confidential informant told him Jeff Hage had dug a hole in his Quonset and covered it with plywood and dirt. Deputy Browne connects this method of concealing hydriodic acid at the San Diego Hill residence to the Hage premises.

[¶ 22] The Hages' own phone records suggested there was drug activity being conducted from their number in Butte. These records showed twenty-one individuals called from the Hages' Butte phone number were tied to narcotics incidents in San Diego. Furthermore, a number associated with Robert Willis was called over 100 times, which also corroborates the earlier information given by Willis. We conclude these connecting circumstances sufficiently allowed the magistrate to find drug activity was being conducted from the Hages' Butte premises and to reasonably infer the probable location of contraband on the Hage premises.

[¶ 23] Lastly, Hage argues that it was inappropriate for Deputy Browne to mention any previous arrests in his affidavit. A suspect's reputation can support a determination of probable cause only when used in connection with other evidence. *See Dymowski,* 458 N.W.2d at 497; *Birk,* 484 N.W.2d at 837. In this case, the information of Hage's California arrest was provided in connection with other evidence before the magistrate. This information further corroborates Hage's connections to California and drug activity. We, therefore, determine the information was properly before the magistrate.

## IV.

[¶ 24] Although each individual piece of information may not be sufficient to establish probable cause,

> probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... [which is not weighed in] individual layers but [in] the "laminated" total.

*Ringquist,* 433 N.W.2d at 215 (citations omitted). In this case, we view the information before the issuing magistrate under the totality of the circumstances. Although there is other hearsay information contained within Deputy Browne's Affidavit upon which the magistrate relied, we conclude, even without considering this additional information, the magistrate had a substantial basis for the issuance of the search warrant.

[¶ 25] We, therefore, conclude the district court properly denied Hage's motion to suppress evidence and affirm the judgment.

[¶ 26] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

