1998 ND 135

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Brook RANGELOFF, Defendant and Appellant.**

**Criminal No. 980019.**

Supreme Court of North Dakota.

June 30, 1998.

Thomas E. Merrick (argued), of Paulson and Merrick, Jamestown, for defendant and appellant.

Frederick R. Fremgen (argued), Assistant State's Attorney, Jamestown, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Brook Rangeloff appeals from a criminal judgment entered following a conditional plea of guilty to the charge of posses-

sion of a controlled substance with intent to deliver. Rangeloff's conviction stems from evidence seized during the search of three mobile homes on November 28, 1995. Rangeloff entered his guilty plea after the trial court denied both a request for a *Franks*[1] hearing and a motion to suppress evidence. We affirm the trial court's judgment, because Rangeloff failed to make a substantial preliminary showing of a false statement, and because there was probable cause to support the search warrants issued by the magistrate.

I.   Facts

[¶ 2] On November 28, 1995, Jamestown Drug Task Force Officer LeRoy Gross and Agent Arnie Rummel of the North Dakota Bureau of Criminal Investigation applied for search warrants to search mobile homes located at 1803, 1817, and 1416 Western Park Village in Jamestown. The search warrant applications were supported by the officers' testimony.

[¶ 3] At the time of the applications for the search warrants, the officers provided the following information on the mobile home at 1803 Western Park Village [hereinafter 1803], which was the residence of Dale Schlosser. In January and February of 1995, law enforcement conducted two garbage searches at 1803 and found mail with Schlosser's name on it and marijuana seeds and stems. In March, April, and May 1995, three separate informants told Officer Gross of Schlosser's dealing in marijuana. On November 28, 1995, the same day the officers applied for the search warrants, law enforcement arranged a controlled buy through an informant to purchase marijuana at 1803. Schlosser left 1803 during the buy and went to 1416 Western Park Village [hereinafter 1416] for a few minutes. He then returned to 1803 and completed the transaction, weighing out approximately two ounces of marijuana on a scale for the informant.[2]

1. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court outlined the requirements that must be met in order for a defendant to be entitled to an evidentiary hearing to challenge the truthfulness of factual statements made by an affiant in a warrant affidavit.

2. The magistrate specifically asked Agent Rummel why the informant should be considered credible. Agent Rummel informed the magistrate this informant had assisted law enforcement approximately 15 times in the area, and approximately 36 times in North Dakota and had performed credibly and reliably.

[¶ 4] The officers also informed the magistrate about the mobile home at 1817 Western Park Village [hereinafter 1817], which was the residence of Brook Rangeloff. In January 1995, law enforcement conducted a garbage search at 1817 and found five marijuana seeds. An informant told them Brook Rangeloff was dealing from his trailer. In June 1995, a citizen informant[3] provided the officers with a "complete layout" of Rangeloff's dealings, both from his residence at 1817 and from 1416. In June 1995, the citizen informant told the police Rangeloff stated he knew the "cops" were on to him so he no longer was putting controlled substances in his garbage, but disposing of them in his fireplace. Officer Gross told the magistrate he had seen Rangeloff at 1817 and that is the address he uses.

[¶ 5] The officers revealed the following information with regard to the mobile home at 1416, which was the residence of J.C., Rangeloff's girlfriend. According to the citizen informant, Rangeloff stayed at 1416 part of the time, and was dealing in marijuana from there. On October 30, 1995, Agent Rummel gave money to a suspect who purchased and smoked marijuana at 1416. The suspect then delivered marijuana from this transaction to Agent Rummel. Also, Schlosser visited 1416 for a few minutes during the controlled buy on November 28, 1995.

[¶ 6] The magistrate considered the information presented, determined probable cause existed, and issued search warrants for the three mobile homes. During the searches, the officers seized two one-pound bags of marijuana, several smaller plastic bags of marijuana, drug paraphernalia, cash, and a number of other documentary pieces of evidence such as address books and bank receipts.

[¶ 7] Rangeloff moved to suppress evidence arguing the magistrate did not have probable cause to issue warrants for 1416 and 1817. Rangeloff also sought a *Franks* hearing, claiming false testimony had been used to support the warrant applications. After a preliminary hearing on the matter, the trial court denied Rangeloff's request for a *Franks* evidentiary hearing. The trial court found Rangeloff had failed to meet his burden of making a substantial preliminary showing of falsehoods made by the officers. The trial court also denied Rangeloff's motion to suppress, finding the magistrate had sufficient probable cause to issue the search warrants.

[¶ 8] Rangeloff raises two issues on appeal: (1) whether he made a substantial preliminary showing entitling him to a *Franks* hearing; and, (2) whether probable cause existed to search the mobile homes at 1416 and 1817 Western Park Village.

## II. Franks Hearing

[¶ 9] The standard set forth by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978), governs allegations that law enforcement made false statements in the affidavit supporting a search warrant.

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*State v. Rydberg*, 519 N.W.2d 306, 308–09 (N.D.1994). A false affidavit statement under *Franks* is one that misleads the neutral and detached magistrate into believing the stated facts exist, and those facts in turn

---

**3.** A citizen informant, in the context used before the magistrate, was someone who volunteered information, did not want anything in return for the information, and was not at risk or in fear of going to jail.

affect the magistrate's evaluation of whether or not there is probable cause. *State v. Morrison*, 447 N.W.2d 272, 274 (N.D.1989) (relying on *State v. Ennis*, 334 N.W.2d 827, 831 (N.D.1983)). The standard set out in *Franks* may also apply to statements that are deliberately false or misleading by omission. *See State v. Winkler*, 552 N.W.2d 347, 352 n. 1 (N.D.1996) (discussing the extension of *Franks* analysis to omissions of information, but not applying the extension when the omission does not cast doubt on the existence of probable cause); *see also State v. Erickson*, 496 N.W.2d 555, 559–60 (N.D.1993) (holding trial court's finding omission of information was not intentional or with reckless disregard for truth was not clearly erroneous). However, "for an omission to serve as the basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause." 2 *W. LaFave*, Search and Seizure, § 4.4(c) (3d ed.1996) (quoting *United States v. Colkley*, 899 F.2d 297 (4th Cir.1990)).

[¶ 10] Under *Franks*, an evidentiary hearing is only required if:

(1) a defendant makes a substantial preliminary showing, accompanied by an offer of proof, that false statements were made in · support of a search warrant, either knowingly and intentionally or with reckless disregard for the truth, and (2) the allegedly false statements are necessary to a finding of probable cause. No evidentiary hearing is required if there remains sufficient evidence to support a finding of probable cause without the allegedly false statements, and allegations that false statements were negligently or innocently made are insufficient to necessitate an evidentiary hearing.

*State v. Handtmann*, 437 N.W.2d 830, 836 n. 3 (N.D.1989) (referring to *State v. Padgett*, 393 N.W.2d 754, 756 (N.D.1986)). The allegations should clearly delineate the statements claimed to be false and they should be accompanied by a statement supporting the reasons the statements are believed to be false. *Id.* Affidavits or other reliable nonconclusory statements of witnesses should be furnished, or the absence of such support satisfactorily explained. *Id.* The burden of proof necessary to make a threshold showing is something less than a preponderance of the evidence. 2 *W. LaFave*, Search and Seizure, § 4.4(d) (3d ed.1996). We have not previously articulated our standard for reviewing a trial court's ruling on whether a defendant has made substantial preliminary showing for a *Franks* evidentiary hearing. We have applied the clearly erroneous standard to review whether a defendant has met his burden to establish recklessness or deliberate falsity, considering such ruling to be a finding of fact. *State v. Damron*, 1998 ND 71, ¶ 10, 575 N.W.2d 912; *Padgett*, 393 N.W.2d at 757. We consider the trial court's ruling on whether a substantial preliminary showing has been made to be a finding of fact, but, we review a trial court's findings of fact in a preliminary criminal proceeding under a separate, but comparable, standard.[4] *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994). "A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of

---

4. The federal courts are split on what standard of review should be applied to the trial court's decision not to hold a *Franks* hearing. *United States v. Dale*, 991 F.2d 819, 843 n. 1 (D.C.Cir. 1993) (choosing not to· articulate a standard when trial court's decision would pass muster under either standard of review). Four circuits apply the clearly erroneous standard. *Id.* (citing *United States v. Buchanan*, 985 F.2d 1372, 1378 (8th Cir.1993); *United States v. Skinner*, 972 F.2d 171, 177 (7th Cir.1992); *United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir.1990); *United States v. One Parcel of Property*, 897 F.2d 97, 100 (2d Cir.1990)). Two circuits review the trial court's decision *de novo. See United States v. Dickey*, 102 F.3d 157, 162 (5th Cir.1996); *United States v. Young*, 86 F.3d 944, 947 (9th Cir.1996).

The Sixth Circuit applies a two-prong standard, applying the clearly erroneous standard to the trial court's factual findings, and applying the *de novo* standard to the trial court's legal conclusions. *United States v. Hill*, 142 F.3d 305, 310 (6th Cir.1998). Whether a substantial preliminary showing that specific portions of the sworn statements are deliberately or recklessly false is considered a finding of fact. *Id.* If the first prong is met, the appellate court reviews *de novo* whether the challenged statements are necessary for probable cause. *Id.* We need not address the second prong here, because the trial court specifically found the defendant failed to make a substantial preliminary showing that falsehoods were intentionally or deliberately made.

affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *Id.*

■ [¶ 11] Rangeloff claimed several statements of sworn testimony made by the police officers in seeking the warrant were untruthful. On appeal, he concedes he failed to substantiate two of his claims, but he argues he met his burden to show the testimony surrounding the October 30, 1995, drug buy at 1416 was untruthful.

[¶ 12] Specifically, Rangeloff alleges the following underlined portions of statements from Agent Rummel were untrue: *"In regards to 1416, in October of this year a subject delivered to me in this case it was that I gave some money to a suspect,* that person went up to 1416 Western Park Village and met with a male there and . . . the guy there wanted to smoke some and delivered the marijuana and *then in turn it was delivered to me.* . . . October 30th of this year." Rangeloff also alleges the officers' omission of information explaining that the suspect was not under continuous observation by police officers during the October buy was misleading to the magistrate.

[¶ 13] Rangeloff raised the issue of the alleged false statements in his motion to suppress. The motion did not request a *Franks* hearing. The motion identified only two specific allegations of falsity, and Rangeloff offered no affidavits or other reliable statements to support his allegations along with the motion. Instead, Rangeloff indicated he would provide testimony at the suppression hearing to show the falsity.

[¶ 14] While it may not have been required under the *Franks* standard, the trial court allowed Rangeloff to submit the oral testimony of Kelly Ostenson, the "suspect" involved in the October drug buy.[5] Ostenson admitted meeting with Agent Rummel on October 30, 1995. Ostenson, however, testified it was M.M., an informant, who actually handed her the money and to whom she delivered the marijuana. On cross-examination, Ostenson admitted Agent Rummel was with M.M. to give him a ride, and Agent Rummel was the likely source of the money M.M. had given her. Ostenson admitted meeting with Brook Rangeloff at 1416, but denied buying the marijuana from him. When questioned as to whom she purchased the marijuana from, Ostenson refused to answer the question. Ostenson also admitted she had indicated to M.M. that a male said he wanted to smoke with her, but she claimed the male was not Brook Rangeloff. Ostenson testified she made two stops at other locations. This was the only evidence Rangeloff offered at this stage showing the officers intentionally omitted information in regard to the continuous observation of Ostenson.[6]

■ [¶ 15] The trial court found Rangeloff failed to make a substantial preliminary showing a false statement was knowingly or intentionally made to the magistrate or given with reckless disregard for truth. We agree with the trial court after our review of the testimony of Ostenson, who was the only witness relied upon to prove the statements were false. Regardless of whether Agent Rummel or M.M. handed Ostenson the money or received the marijuana, all the parties were in the car when the marijuana changed hands and Ostenson testified Agent Rummel was the likely source of the money. While there may have been instances when Agent Rummel may have been mistaken about some minor details of the transaction, Rangeloff did not make a substantial showing of recklessness or deliberate falsity. A mere showing of negligence or innocent mistake is insufficient to establish recklessness or deliberate falsity to meet the threshold require-

5. We believe the trial court prudently allowed the testimony presented here, because the testimony presented to the magistrate involved a number of unidentified informants. *See 2 W. LaFave,* Search and Seizure, § 4.4(d) (3d ed.1996) (discussing the inherent dilemma in anonymous informant cases and the possibility of affording the defendant discovery on grounds short of those required for a *Franks* evidentiary hearing). We do not require the trial court to permit testimony in cases in which a defendant fails to use the procedure outlined in *Franks.*

6. Later, in the probable cause portion of the hearing, Officer Rummel admitted Special Agent Cal Dupree lost sight of Ostenson after she left the mobile home at 1416.

ment for a *Franks* hearing. *Padgett*, 393 N.W.2d at 757. We conclude, therefore, the trial court's finding Rangeloff failed to make a substantial preliminary showing of falsehood is not contrary to the manifest weight of the evidence.

### III. Probable Cause

[¶ 16] Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the North Dakota Constitution. Whether there is probable cause to issue a search warrant is a question of law. *Damron*, 1998 ND 71, ¶ 5, 575 N.W.2d 912; *State v. Hage*, 1997 ND 175, ¶ 10, 568 N.W.2d 741; *State v. Mische*, 448 N.W.2d 415, 417 (N.D.1989). The totality-of-the-circumstances test is used to review whether information before the magistrate was sufficient to find probable cause, independent of the trial court's findings. *Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912; *Hage*, 1997 ND 175, ¶ 11, 568 N.W.2d 741; *State v. Herrick*, 1997 ND 155, ¶ 12, 567 N.W.2d 336.

[¶ 17] The magistrate should make a practical, common sense decision on whether probable cause exists to search that particular place. *Damron*, 1998 ND 71, ¶ 6, 575 N.W.2d 912; *Hage*, 1997 ND 175, ¶ 10, 568 N.W.2d 741; *Rydberg*, 519 N.W.2d at 308. We give deference to the magistrate's factual findings in determining probable cause if there is a substantial basis for the conclusion. *State v. Woehlhoff*, 540 N.W.2d 162, 165 (N.D.1995); *State v. Frohlich*, 506 N.W.2d 729, 732 (N.D.1993).

### A. 1416 Western Park Village

[¶ 18] Rangeloff contends there was no probable cause to issue a search warrant to search J.C.'s residence at 1416 Western Park Village. Rangeloff argues the magistrate was presented nothing but "bare bones" assertions and conclusory evidence.

[¶ 19] We have often stated, sufficient information, rather than "bare bones" information must be presented to the magistrate for the determination of probable cause. *Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912; *State v. Ennen*, 496 N.W.2d 46, 50 (N.D.

1993); *State v. Ringquist*, 433 N.W.2d 207, 213 (N.D.1988). An affidavit expressed in conclusions without detailing underlying information is insufficient for probable cause. *Mische*, 448 N.W.2d at 417–18; *Ringquist*, 433 N.W.2d at 213.

[¶ 20] The magistrate here had information that on the same day as the application for the search warrant, the police had arranged a controlled buy of marijuana at 1803, Schlosser's residence. The confidential informant the police used in the controlled buy went into Schlosser's residence. While inside, the informant overheard Schlosser's telephone conversation arranging to get the marijuana. While the confidential informant was still inside, Schlosser left his residence and went to 1416. This was observed by the police who were monitoring the marijuana buy with a video camera. Schlosser was at 1416 for about five minutes and then returned to 1803. According to the informant, Schlosser then went to his bedroom, obtained a scale, and measured out the marijuana.

[¶ 21] The magistrate had information indicating the police were aware from other sources to the Drug Task Force that J.C. lived at 1416, and also that Rangeloff had been dealing marijuana from this address. A citizen informant had provided Agent Rummel with information on June 23, 1995, indicating Rangeloff was dealing marijuana out of both 1817 and 1416. Officer Gross informed the magistrate that since receiving the June 23, 1995, information he had observed Rangeloff and J.C.'s vehicle at 1416, and that Rangeloff frequents both 1416 and 1817. The magistrate was further informed that in October 1995, Agent Rummel was involved in the drug buy involving a suspect who visited 1416, purchased marijuana, and smoked marijuana with a male who was there.

[15] [¶ 22] Citizen informants are presumed to be reliable. *Hage*, 1997 ND 175, ¶ 16, 568 N.W.2d 741; *Frohlich*, 506 N.W.2d at 733 (relying on *State v. Boushee*, 284 N.W.2d 423, 430 (N.D.1979)). The reliability should be evaluated and verified by independent police investigation, if possible. *Frohlich*, 506 N.W.2d at 733; *State v. Ronngren*, 361 N.W.2d 224, 228 (N.D.1985). Here, the

police had a reliable citizen informant, who gave specific information relating to 1416 in June 1995. The police verified the ongoing drug activity at 1416 by arranging drug buys in October and November. Applying the totality-of-the-circumstances test, we conclude the magistrate had ample information, much more than "bare bones," to find probable cause to search 1416.

### B. 1817 Western Park Village

■ [¶ 23] Rangeloff contends there was no probable cause to issue a search warrant to search his residence at 1817 Western Park Village. Rangeloff argues again the magistrate was presented nothing but "bare bones" assertions, reputation evidence, and conclusory information.

[¶ 24] The information provided to the magistrate on 1817 was clearly not as detailed as the information relating to 1416. Agent Rummel informed the magistrate that 1817 was Rangeloff's address and he had seen Rangeloff there. A reliable informant told the police Rangeloff had been dealing from that mobile home. In January 1995, the police conducted a garbage search at 1817 that produced five marijuana seeds. The magistrate was further informed that in June 1995, a citizen informant gave the police a "complete layout" of Rangeloff's dealings, which included information on dealing out of both 1817 and 1416. The citizen informant also told the police Rangeloff knew the "cops" were on to him and he no longer disposed of seeds or stems in his garbage, but in his fireplace. The magistrate specifically asked if there was any information more recent than June on 1817, to which Officer Gross responded: "Not other than that I've seen Brook there and I've seen [J.C.'s] vehicle there and that he—he does still go to both places."

■ [¶ 25] We agree with Rangeloff that some of the information relating to drug activity at 1817 was conclusory. Mere statements of reputation or unsupported conclusions and allegations, without some elaboration of the underlying circumstances supporting conclusions or statements, are insufficient to establish probable cause. *Handtmann*, 437 N.W.2d at 835; *Mische*,

448 N.W.2d at 417–18. The use of a suspect's reputation, however, combined with other evidence, can support a determination of probable cause. *State v. Dymowski*, 458 N.W.2d 490, 497 (N.D.1990).

[¶ 26] Here, information from the citizen informant that Rangeloff stated the "cops" were on to him shows the specific knowledge of the informant. Likewise, the citizen informant knew Rangeloff was disposing of seeds and stems in the fireplace instead of in the garbage. This information was not conclusory, but specific to Rangeloff and his activity at his residence. The evidence the officers obtained from the garbage search is also nonconclusory evidence connecting Rangeloff's residence with dealing in marijuana.

■ [¶ 27] The fact that most of the nonconclusory information was gained several months before the application for the search warrant is indeed troublesome. Information furnished in an application for a search warrant must be timely and probable cause to search must exist at the time the search warrant is issued. *Ringquist*, 433 N.W.2d at 213. Probable cause, however, is not determined by simply counting the number of days between the time of the facts relied upon and the warrant's issuance. *Hage*, 1997 ND 175, ¶ 12, 568 N.W.2d 741; *State v. Johnson*, 531 N.W.2d 275, 278 (N.D. 1995). When information presented to the magistrate provides facts showing conduct or activity of a protracted and continuous nature, the passage of time becomes less important to the validity of the probable cause. *Hage*, 1997 ND 175, ¶ 12, 568 N.W.2d 741. Dealing in drugs is intrinsically a protracted and continuous activity. *Id.* at ¶ 13 (citing *Ringquist*, 433 N.W.2d at 214) (other citations omitted).

■ [¶ 28] "The proper inquiry is whether the magistrate, in considering the nature of the crime, the criminal, the thing to be seized, and the place to be searched, could reasonably believe that evidence of criminal activity was probably at the described location." *Hage*, 1997 ND 175, ¶ 13, 568 N.W.2d 741. While each piece of information alone may not be sufficient to establish probable cause, the sum total layers of information

and the synthesis of what the police know, have heard, and observed as trained officers, weighed in a "laminated total" may amount to probable cause. *Damron,* 1998 ND 71, ¶ 7, 575 N.W.2d 912 (citing *Ringquist,* 433 N.W.2d at 215–16) (other citations omitted).

[¶ 29] While some of the information presented to the magistrate on 1817 could be considered "stale," when reviewing a magistrate's determination of probable cause, we resolve doubtful or marginal cases in favor of the magistrate's determination. *Damron,* 1998 ND 71, ¶ 6, 575 N.W.2d 912. Under the totality of the circumstances, considering the laminated total of information presented, the magistrate had sufficient probable cause to issue a search warrant for Rangeloff's residence at 1817.

IV.

[¶ 30] The trial court's finding Rangeloff failed to make a substantial showing of a false statement was not clearly erroneous, and there was probable cause to support the search warrants issued by the magistrate. We affirm the judgment of the trial court.

[¶ 31] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.