COMMONWEALTH of Kentucky,
Appellant,

v.

Steven HAYWARD, Appellee.

No. 2000–SC–0080–DG.

Supreme Court of Kentucky.

Jan. 25, 2001.

A.B. Chandler III, Attorney General, Michael Harned, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellant.

Albert W. Barber, Jr., Owensboro, Counsel for Appellee.

GRAVES, Justice.

This Court granted discretionary review to determine whether the presence of the chemical compounds ephedrine or pseudoephedrine plus the other requisite chemical reagents for manufacturing methamphetamine are sufficient to support a conviction for trafficking in the Schedule II controlled substance methamphetamine.

Since the conduct from which the indictment stems occurred in 1997, this case was prosecuted under statutory provisions which have since been modified. In August 1997, the relevant provisions read:

**KRS 218A.1413. Trafficking in controlled substance in second degree— Penalties.**

(1) A person is guilty of trafficking in a controlled substance in the second degree when:

(a) He knowingly and unlawfully traffics in a controlled substance classified in Schedules I and II....

**KRS 218A.010. Definitions for chapter.**

As used in this chapter:

(3) "Controlled substance" means a drug, substance, or immediate precursor in Schedules I through V and includes a controlled substance analogue.

(9) "Immediate precursor" means a substance which is the principal compound commonly used or produced primarily for use, and which is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance, the control of which is neces-

sary to prevent, curtail, or limit manufacture.

(11) "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. . . .

(24) "Traffic" means to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance.

Appellee, Steven Hayward, was found to be in possession of pseudoephedrine, red phosphorous, iodine, and hydrochloric acid, as well as other chemicals and equipment used in the manufacture of methamphetamine. The Muhlenberg Circuit Court entered judgment on the jury verdict finding guilt of trafficking in methamphetamine.

In a 2–1 opinion, the Court of Appeals reversed Appellee's conviction. The majority opinion held that insufficient evidence existed to prove Appellee had engaged in trafficking in a controlled substance since none of the controlled substance (in this instance, methamphetamine) was actually found in Appellee's residence. The court opined it was not an offense to possess pseudoephedrine and the chemical reagents which convert it to methamphetamine. The Court of Appeals panel surmised that the non-controlled substance pseudoephedrine was not an immediate precursor of methamphetamine.

In footnote 1, the Court of Appeals majority stated:

The forensic chemist testified that to manufacture methamphetamine, "you start with ephedrine or pseudoephedrine," and described subsequent steps a manufacturer would take before pseudoephedrine would be converted to methamphetamine. A special agent with the Drug Enforcement Administration testified that extracting pseudoephedrine constituted the "initial step" in manufacturing methamphetamine. Thus, the evidence did not show that pseudoephedrine is an immediate precursor.

The court also relied on the fact that the 1998 Kentucky General Assembly enacted a new statute relating to manufacturing methamphetamine, which makes it a criminal offense to knowingly and unlawfully possess the chemicals or equipment for the manufacture of methamphetamine with the intent to manufacture methamphetamine. KRS 218A.1432. The Court of Appeals determined, "prior to the creation of this statute it was not an offense to possess the chemicals which serve to create methamphetamine, and which are not themselves controlled substances." The Court of Appeals concluded the new statute "was created to fill a gap in the law." We believe the Court of Appeals has mischaracterized the substance of the testimony of the forensic chemist.

The legal definition of "immediate precursor" is "a substance which is the principal compound commonly used or produced primarily for use, and which is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance, the control of which is necessary to prevent, curtail, or limit manufacture." KRS 218A.010. Kentucky State Police Crime Laboratory forensic chemist William Bowers testified that extracting the principal compound pseudoephedrine from Sudafed tablets is the initial step in manufacturing methamphetamine. Bowers explained that the next step would be

to put the pseudoephedrine into a solution with red phosphorous, iodine, and hydrochloric acid and cook the solution to form methamphetamine oil. The last step is to treat the methamphetamine oil with hydrochloric acid to make methamphetamine in powder form. Both pseudoephedrine and the requisite reagents required to synthesize methamphetamine (including red phosphorus, sulfuric acid, iodine and hydrochloric acid) were found in Appellee's residence.

Bowers also testified that in his experience, there would be no reason for someone to extract pseudoephedrine from Sudafed tablets unless that person is in the process of manufacturing methamphetamine. He admitted that while a controlled substance does not yet exist during the extraction of the pseudoephedrine, the extraction is the initial step toward manufacturing methamphetamine. Consequently, there is no reason other than the manufacture of methamphetamine for having a combination of pseudoephedrine, lye, rock salt, iodine crystals, red phosphorous, toluene, sulphuric acid, and hydrochloric acid in one place.

The majority of the Court of Appeals panel, underscoring the chemist's "initial step" testimony, opined that Appellee was entitled to a directed verdict of acquittal of trafficking in methamphetamine on the basis that pseudoephedrine was not an "immediate chemical intermediary" of methamphetamine.

Dissenting, Judge Knox stressed that:

[A]s explained by Bowers, various chemical reagents are used to act upon pseudoephedrine in order to convert that substance into methamphetamine. That testimony, combined with the actual presence in Appellee's residence of those reagents and other ingredients necessary to convert pseudoephedrine into methamphetamine, seems to me to constitute a sufficient basis to have submitted this case to the jury.

In footnote 3, Judge Knox in his dissent points out:

KRS 218A.010 defines "immediate precursor" as "a substance which is the principal compound commonly used or produced primarily for use, and which is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance, the control of which is necessary to prevent, curtail, or limit manufacture." Further, KRS 218A.010 provides that "controlled substance means a drug, substance, or immediate precursor in Schedules I through V . . . ."

The dictionary definition of a precursor is a substance that precedes and is the source of another substance. The *Random House Unabridged Dictionary* defines a "precursor" as "a chemical that is transformed into another compound, as in the course of a chemical reaction, and therefore precedes that compound in the synthetic pathway." RANDOM HOUSE UNABRIDGED DICTIONARY 1522 (2d ed. 1993). Similarly, Webster defines "precursor" as "a substance from which another substance is formed especially by natural processes." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1785 (3d ed. 1993).

In chemical literature, precursors are characterized as substances that, in nature, might be inactive. However, when combined with another chemical, the result is a new product. Methamphetamine is synthesized from an inactive or marginally-inactive compound (ephedrine or pseudoephedrine) and other chemicals are then added to produce the drug. The precursor, and main ingredient, of methamphetamine is ephedrine or pseudoephedrine. Methamphetamine ($C_{10}H_{15}N$) is synthe-

sized from ephedrine ($C_{10}H_{15}NO$) or pseudoephedrine ($C_{10}H_{15}NO$) by removal (a chemical oxidation-reduction reaction) of the oxygen atom (O):

$$
\begin{array}{ccc}
\begin{array}{c}
C_6H_5 \\
| \\
HCOH \\
| \\
CH_3NHCH \\
| \\
CH_3
\end{array}
&
+
\quad
\begin{array}{c}
\langle HI \rangle \\
\langle \quad \rangle \\
\langle red\ P \rangle
\end{array}
&
\begin{array}{c}
C_6H_5 \\
| \\
HCH \\
| \\
CH_3NHCH \\
| \\
CH_3
\end{array}
\end{array}
$$

|              |              |                  |
|:------------:|:------------:|:----------------:|
| Ephedrine or Pseudoephedrine | Hydriodic Acid Red Phosphorous | Methamphetamine |

Harry F. Skinner, "Methamphetamine Synthesis Via Hydriotic Acid/Red Phosphorous Reduction of Ephedrine," 48 Forensic Science International 1, 123–134 (1990).

According to the testimony of Bowers, of all the chemicals and reagents used in the manufacture of methamphetamine, only ephedrine or pseudoephedrine satisfies the definition of a precursor. It is only the ephedrine or pseudoephedrine that is the source of methamphetamine. Ephedrine is the primary precursor of methamphetamine. Gary D. Irvine & Ling Chin, "The Environmental Impact and Adverse Health Effects of the Clandestine Manufacture of Methamphetamine," 115 National Institute on Drug Abuse Research Monograph 33, 36 (1991). The source of methamphetamine is not red devil lye, rock salt, iodine crystals, red phosphorous, toluene, sulphuric acid, or the hydrochloric acid. These other chemicals in Appellant's possession are reagents, solvents and catalysts used in the conversion of ephedrine to methamphetamine. *Id.*

Possessing the primary precursor (and in this case the only precursor for methamphetamine), ephedrine or pseudoephedrine, along with all the other necessary chemicals for the manufacture of methamphetamine provided a legally sufficient basis for the jury to find that Appellant was trafficking in methamphetamine. Therefore, we reverse so much of the opinion of the Court of Appeals that holds ephedrine or pseudoephedrine is not an immediate precursor of methamphetamine. We reinstate the judgment of conviction and affirm the circuit court.

We affirm the other rulings in the Court of Appeals opinion, namely: (1) the affidavit for the search warrant established probable cause, (2) the constructive possession of a firearm is sufficient for application of the drug violation enhancement statute; and (3) the evidence was legally sufficient for conviction of possession of marijuana.

The judgment of the Muhlenberg Circuit Court is affirmed.

All concur.