2003 ND 153

STATE of North Dakota, Plaintiff
and Appellee,

v.

Darren BALLWEG, Defendant
and Appellant.

State of North Dakota, Plaintiff
and Appellee,

v.

Kathy Materi, Defendant
and Appellant.

Nos. 20030051, 20030052, 20030053.

Supreme Court of North Dakota.

Oct. 23, 2003.

R. Scott Stewart, State's Attorney, Langdon, ND, for plaintiff and appellee.

Lindsey D. Haugen (argued) and Steven M. Light, Larivee & Light, Grand Forks, ND, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Darren Ballweg ("Ballweg") appealed from the trial court judgments and convictions following his conditional guilty pleas to manufacturing methamphetamine and theft of property. Kathy Materi ("Materi") appealed a trial court judgment and conviction following her conditional guilty plea for manufacturing methamphetamine. They contend the trial court erred in denying their motion to suppress evidence seized while executing a search warrant. We affirm.

I

[¶ 2] On April 9, 2002, a district judge issued a search warrant for Ballweg and Materi's premises. Chief Deputy Greg Fetsch prepared the affidavit requesting the search warrant. The affidavit contained information regarding events which occurred between March 2 and April 9, 2002. Deputy Fetsch stated that on March 2, Dale Kuchar of the Nekoma Farmers Elevator reported a full anhydrous tank was missing from its inventory and had to be assumed stolen. On March 11, Kuchar reported someone had seen the anhydrous tank in Ballweg's yard.

[¶ 3] Deputy Fetsch and Sheriff Zeis went to Ballweg's farmyard. Ballweg was there when they arrived. It appeared he

was in the process of unloading the contents of a trailer into a burning barrel. Fetsch and Zeis questioned Ballweg. Deputy Fetsch stated Ballweg was "very nervous." Ballweg informed the officers he received the anhydrous tank the previous fall and never used it on his crops because it snowed. The officers went to look at the tank and noticed its gauge read 86 percent, and it "appeared to have been there for a while as there were no fresh tracks around." Ballweg did not accompany the officers to look at the tank but instead got into his vehicle and drove away. Deputy Fetsch stated this was "very suspicious behavior," but he did not explain why.

[¶ 4] As they were walking back to their vehicle Ballweg returned and spoke to the officers. He told them he used the anhydrous to gas some rats on the farm. He stated he could not remember whether he picked the tank up from the elevator or whether it had been delivered. As the officers were leaving the farm, they noticed a garage on the property had its windows boarded up, its door padlocked from the outside, and one side completely covered with a blue tarp. Deputy Fetsch stated, "This made us suspicious as to why it was concealed so no one could look inside it."

[¶ 5] After leaving Ballweg's farmyard, Deputy Fetsch went to the Nekoma Elevator to speak with Kuchar. Kuchar stated there was no record of the tank being removed from the elevator. He explained the process Nekoma used for keeping track of tanks and told Fetsch that Ballweg had called and told him he used some of the anhydrous to gas rats on the farm. Deputy Fetsch stated, "Anhydrous ammonia is a key ingredient in the manufacture of methamphetamine."

[¶ 6] Deputy Fetsch told Kuchar to go get the tank and see if any anhydrous was

missing from it. Kuchar reported one hundred pounds was missing. Deputy Fetsch spoke with Ballweg's father who stated they received the tank in October and could not apply the anhydrous because of snow.

[¶ 7] On April 7, Deputy Fetsch received a report that Ballweg bought some items used in the process of making methamphetamine from the Devils Lake Wal-Mart. Along with other purchases, Ballweg "purchased 3 boxes of Sudafed, 96 count per box, 2 packages of 4 AA Lithium batteries, 2 packages of non-latex rubber gloves, 1 package of latex gloves, and 2 boxes of baking soda." Deputy Fetsch stated:

> Sudafed and lithium from that type of battries (sic) is also key ingredients used in the manufacturing of methamphetamine. Baking soda is commonly used as a cutting agent in meth manufacturing. Gloves are also used by the manufacturers of methamphetamine because of the toxcity (sic) of the chemicals and the anhydrous will burn hands that are unprotected by rubber gloves.

[¶ 8] The affidavit also contained information Deputy Fetsch received from North Dakota Highway Patrolman Dana King. The previous Friday night, Trooper King followed a suspicious vehicle registered to Chad Lee into Ballweg's yard at 2:00 a.m. Trooper King pulled into the yard and checked out Lee. While this was occurring, Ballweg came out of the house to see what was going on and instead of talking with them he got a flashlight out of a vehicle and came back. Trooper King found this suspicious because they were parked under a yard light, but he did not explain why. According to the affidavit, Ballweg stated he knew Lee when asked by King. Deputy Fetsch discovered Lee recently got off probation for felony pos-

session of methamphetamine and misdemeanor possession of marijuana.

[¶ 9] Deputy Fetsch concluded the affidavit by describing the land Ballweg and his father farmed. He found there were buildings "capable of housing a meth lab" at three different locations. Based upon the foregoing information, a search warrant was issued for Ballweg's premises. As a result of the evidence discovered during the search, Ballweg and Materi were each charged with manufacturing methamphetamine and Ballweg was charged with theft of property.

[¶ 10] Ballweg and Materi filed a motion to suppress the evidence seized during the search. The trial judge denied the motion, holding there was probable cause to issue the search warrant and, even if there was not, the good faith exception to the exclusionary rule applied. On appeal, they contend the affidavit did not establish probable cause to search and the good faith exception to the exclusionary rule should not apply to this situation.

## II

[¶ 11] The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and Article I, § 8 of the North Dakota Constitution require searches and seizures to be reasonable and warrants to be issued only upon a showing of probable cause. The existence of probable cause is a question of law. *State v. Rangeloff*, 1998 ND 135, ¶ 16, 580 N.W.2d 593. "Probable cause to search exists 'if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched.'" *State v. Thieling*, 2000 ND 106, ¶ 7, 611 N.W.2d 861 (quoting *State v. Johnson*, 531 N.W.2d 275, 278 (N.D.1995)).

[¶ 12] The totality-of-the-circumstances test is used to determine whether sufficient evidence was presented to a magistrate to establish probable cause, independent of the trial court's findings. *State v. Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912.

"Although each bit of information ..., by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, '"probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... which is not weighed in individual layers but in the 'laminated' total." ' "

*Id.* (citations omitted). The magistrate evaluates all the evidence and makes a practical, common sense decision whether probable cause exists to search a particular place. *Id.* at ¶ 6. We generally defer to a magistrate's determination of probable cause so long as there was a substantial basis for the conclusion, and doubtful or marginal cases should be resolved in favor of the magistrate's determination. *Id.*

[¶ 13] Ballweg and Materi contend Deputy Fetsch's affidavit did not establish probable cause. They contend the information in the affidavit was misleading, conclusory, and described normal, everyday conduct.

## IV

[¶ 14] Ballweg and Materi argue the affidavit was misleading because it falsely implied the anhydrous tank was stolen even though Deputy Fetsch knew before he submitted the affidavit that the tank had not actually been stolen. Ballweg and Materi rely on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which was applied by

this Court in *State v. Morrison,* 447 N.W.2d 272, 274 (N.D.1989). Under *Franks:*

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks,* at 155–56, 98 S.Ct. 2674. "The *Franks* standard has been extended to statements that are misleading by omission." *State v. Holzer,* 2003 ND 19, ¶ 7, 656 N.W.2d 686 (citing *Rangeloff,* 1998 ND 135, ¶ 9, 580 N.W.2d 593). Negligent or innocent mistakes are not enough to establish reckless or deliberate falsity. *Damron,* 1998 ND 71, ¶ 9, 575 N.W.2d 912. The alleged misleading facts must affect the magistrate's determination of probable cause. *Morrison,* at 274. Whether there is reckless or deliberate falsity is a finding of fact and is reviewed under the clearly erroneous standard. *Damron,* at ¶ 10 (quoting *Morrison,* at 275). "A finding of fact is clearly erroneous if, although there may be some evidence to support it, the reviewing court on the entire evidence, is left with a definite and firm conviction a mistake has been made." *Id.*

[¶ 15] Ballweg and Materi never specifically requested a *Franks* hearing. However, a suppression hearing was held, during which the trial court heard testimony regarding the information in the affidavit. In denying the motion to suppress, the trial court found the affidavit was not misleading.

[¶ 16] Ballweg and Materi's contention that the statements regarding the anhydrous tank were misleading does not withstand review. At the suppression hearing, Deputy Fetsch testified the tank ended up in Ballweg's yard by mistake, and he reached this conclusion before he applied for the search warrant. Deputy Fetsch concluded there was a mistake regarding the anhydrous tank because Ballweg was never charged with theft. But, the fact Ballweg was not charged with stealing the tank does not necessarily mean he possessed it legally; it could mean there was insufficient evidence to prosecute him. By recounting the report from Kuchar and providing Ballweg's explanation, Deputy Fetsch presented the district judge with enough information to determine the significance of the tank in her probable cause analysis. He did not mislead the district judge with regard to the anhydrous tank. There was no reckless or deliberate falsity or omission which would require setting aside the statements regarding the anhydrous tank.

[¶ 17] Furthermore, the fact the anhydrous tank may have been stolen is not material to the probable cause analysis in this case. Although the purpose for the anhydrous tank on the farm may have created greater suspicion had it been stolen, perhaps suggesting it would be used for an illegal purpose, the material fact regarding the anhydrous was its availability when considered with the items purchased at the Devils Lake Wal–Mart. Anhydrous is the one ingredient needed to

make methamphetamine that is not available in stores. Sandy Hansen, Meth: A Growing Concern for Small Communities, *Valley City Times Record,* September 17, 2003, at 1; *cf. State v. Corum,* 2003 ND 89, ¶ 4, 663 N.W.2d 151 ("Anhydrous ammonia, pseudoephedrine, and batteries are all used to manufacture methamphetamine"). In this case, the fact the anhydrous tank may have been stolen was not necessary to finding probable cause to search the premises, but the availability of anhydrous along with the other information presented in the affidavit was necessary.

In order to succeed on a *Franks* challenge based on an allegation of omitted information, the defendant must show: "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, . . . and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *State v. Winkler,* 552 N.W.2d 347, 352 n. 1 (N.D.1996) (quoting *United States v. Lucht,* 18 F.3d 541, 546 (8th Cir.1994)).

*Holzer,* 2003 ND 19, ¶ 7, 656 N.W.2d 686. Informing the district judge that Ballweg was not going to be charged with stealing the anhydrous tank would not have negated probable cause in this case because there would still have been information establishing Ballweg had access to anhydrous. Therefore, the information regarding the anhydrous tank was not misleading and was properly evaluated by the district judge insofar as there was neither reckless or deliberate falsity nor omitted information that would have eliminated probable cause.

### V

▮▮▮▮ [¶ 18] Ballweg and Materi further contend the affidavit did not contain enough information regarding criminal activity to establish probable cause to search because it described "normal, everyday conduct." The standard of proof necessary to establish guilt at trial is not necessary to establish probable cause. *State v. Hage,* 1997 ND 175, ¶ 10, 568 N.W.2d 741 (quoting *State v. Ringquist,* 433 N.W.2d 207, 212 (N.D.1988)). The relevant inquiry is not whether conduct is innocent or guilty, but what degree of suspicion attaches to it. *Illinois v. Gates,* 462 U.S. 213, 245, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Guthmiller,* 2002 ND 116, ¶ 13, 646 N.W.2d 724. "Circumstantial evidence may alone establish probable cause to support a search warrant." *State v. Duchene,* 2001 ND 66, ¶ 13, 624 N.W.2d 668 (quoting *State v. Wamre,* 1999 ND 164, ¶ 6, 599 N.W.2d 268)).

### A.

▮▮▮▮ [¶ 19] Ballweg and Materi argue the covered windows and tarp on the garage should have only caused suspicion and further investigation, not probable cause. *See State v. Lewis,* 527 N.W.2d 658, 663 (N.D.1995) ("[S]uspicion, without anything more specific, does not amount to probable cause to search"). In *Lewis,* this Court found that an affidavit did not establish probable cause to believe the Lewises were growing marijuana in their home. *Id.* at 663. The affidavit for the search warrant in *Lewis* included information regarding the purchase of indoor growing supplies. *Id.* at 660. It also revealed that the west and south upstairs windows of the residence were covered while the other windows on that floor were not, a thermal imaging device had detected extra heat loss in that area of the house, and the Lewises' electricity consumption had increased greatly. *Id.* We observed that insulating windows was normal during the winter in North Dakota and the growing

supplies were as consistent with growing marijuana as they were with growing other plants indoors. *Id.* at 662–63. "We refuse[d] to view diligent efforts to reduce heat loss, without more, as circumstantial evidence of an indoor marijuana grow operation sufficient to support the issuance of a search warrant." *Id.* at 663.

[¶ 20] This case is distinguishable from *Lewis* in two respects. First, here the building boarded up was a detached garage, not a residence. Although it is entirely innocent to conceal a detached garage, a greater degree of suspicion may attach to a completely concealed garage than to a residence that has its windows insulated. *See State v. Dallmann,* 441 N.W.2d 912, 919 (N.D.1989) (stating outbuildings and pastureland are not accorded the same "special protection" as the home under the Fourth Amendment).

[¶ 21] Second, there is more evidence indicating drug activity in this case than there was in *Lewis.* In *Lewis,* there was no indication marijuana was being grown with the equipment purchased. Here, the affidavit contained evidence concerning the specific ingredients and supplies used to manufacture methamphetamine. Ballweg and Materi had access to anhydrous and had purchased 288 capsules of Sudafed, baking soda, and other supplies used in the process of manufacturing methamphetamine. All of these products have normal, everyday uses. However, together they are also used to manufacture methamphetamine. For example, "extracting the principal compound pseudoephedrine from Sudafed tablets is the initial step in manufacturing methamphetamine." *Commonwealth v. Hayward,* 49 S.W.3d 674, 675 (Ky.2001). Baking soda is commonly used as a cutting agent. *Cf. State v. Mische,* 448 N.W.2d 415, 418 (N.D.1989) ("A cutting agent is illegal drug paraphernalia"). A high degree of

suspicion attaches to the collective purchase of ingredients and supplies used to manufacture methamphetamine. Considering the availability of anhydrous, the purchase of Sudafed in an amount inconsistent with personal use, the purchase of a cutting agent and other supplies used to manufacture methamphetamine, and the condition of the garage, the laminated total of the layers in this case establishes a substantial basis from which a person of reasonable caution could conclude there was probable cause to search Ballweg and Materi's premises for evidence of a methamphetamine manufacturing operation. *See Corum,* 2003 ND 89, ¶ 27, 663 N.W.2d 151 (holding evidence indicating the defendant stole anhydrous, purchased other supplies for manufacturing methamphetamine, kept the ingredients and finished product in his home, and had prior drug convictions established probable cause to search his home); *see also Hayward,* at 677 ("Possessing the primary precursor . . . , ephedrine or pseudoephedrine, along with all the other necessary chemicals for the manufacture of methamphetamine provided a legally sufficient basis for the jury to find that Appellant was trafficking in methamphetamine").

**B.**

[¶ 22] Ballweg and Materi claim the information provided by Trooper King regarding Chad Lee did not establish any suspicion of criminal activity. The information supplied by Trooper King in this case was reliable. *See Hage,* 1997 ND 175, ¶ 16, 568 N.W.2d 741 ("observations of fellow law enforcement officers involved in a common investigation are also considered a reliable basis in a magistrate's probable cause determination"). Deputy Fetsch independently discovered the information regarding Lee's probation. *See id.* The fact Trooper King relayed that Ballweg stated he knew Lee could also be evaluated be-

cause hearsay can provide a basis for probable cause. *Id.* at ¶ 15; *see also* N.D.R.Crim.P. 41(c)(1). Nevertheless, the question remains whether the substance of the information regarding Lee added anything to the probable cause determination.

[¶ 23] " '[M]ere suspicion that persons visiting the premises are connected with criminal activity will not suffice' for issuance of a warrant to search the premises." *Thieling*, 2000 ND 106, ¶ 12, 611 N.W.2d 861 (quoting 2 Wayne R. La-Fave, Search and Seizure § 3.7(d), at 374 (3d ed.1996)). In *Thieling*, the affidavit referred to three instances regarding Thieling's associations. *Id.* This Court found:

> This evidence is of little or no probative value. Associating at one's home with one who was merely charged with a drug crime three and a half years ago, associating with one's own brother who was convicted of a drug crime about seventeen years ago, and associating with the roommate of a person convicted of drug crimes are very remote links to drug activities. There is no specific information indicating the persons visited Thieling's home on more than one occasion and there is no indication of what the persons did while at Thieling's home.

*Id.* (footnote omitted). This Court found the information regarding Thieling's associations in connection with the other minimal evidence of drug activity was at most "a very thin layer" in the probable cause analysis. *Id.*

[¶ 24] The information regarding Chad Lee in this case is similar to the information in *Thieling*. However, there is more evidence of drug activity in this case because of the presence of the anhydrous, Sudafed, and other supplies used to manufacture methamphetamine. *See id.* at ¶ 9 (indicating the only evidence of drug activity was baggies, plastic, and tin foil which are common household goods). The affidavit in this case did not rely merely on household goods, but was based on the collective purchase of most of the ingredients and supplies used to make the actual drug. Therefore, the association evidence regarding Chad Lee has some higher degree of suspicion attached to it than the association evidence in *Thieling*. Although this is a thin layer in the probable cause analysis, it could properly be evaluated in determining whether there was probable cause to search the premises.

### C.

[¶ 25] Under the totality of the circumstances, there was sufficient information presented to the district judge from which a person of reasonable caution could conclude evidence of a methamphetamine manufacturing operation would be found at Ballweg and Materi's premises. There was other questionable information contained within Deputy Fetsch's affidavit. However, we conclude the magistrate had a substantial basis to issue the search warrant without considering this information. Although the information in the affidavit describes innocent conduct when observed in a piecemeal fashion, the combination of the presence of anhydrous, the collective purchase of the large quantity of Sudafed and other supplies used in the process of manufacturing methamphetamine, and the condition of the garage, created a substantial basis for the district judge to conclude probable cause existed to search the premises.

### VI

[¶ 26] The trial judge determined that if there was not probable cause to issue the search warrant, the good faith exception to the exclusionary rule would nevertheless apply to this situation. Because we find the affidavit established probable

cause to search Ballweg and Materi's premises, we do not consider whether the good faith exception applies.

## VII

[¶ 27] The judgments of the district court are affirmed.

[¶ 28] DALE V. SANDSTROM, WILLIAM A. NEUMANN, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.