2008 ND 65

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Jarrett Alynn KIEPER, Defendant and Appellant.**

No. 20070100.

Supreme Court of North Dakota.

April 17, 2008.

Julie Ann Lawyer (on brief), Assistant State's Attorney, and Matthew Ramage–White (on brief), third-year law student, Bismarck, N.D., for plaintiff and appellee.

Michael Ray Hoffman, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Jarrett Kieper appeals from a criminal judgment entered upon his conditional guilty plea. We conclude the issuance of the search warrant was not supported by probable cause, and the district court erred in denying Kieper's motion to suppress the evidence seized as a result of the illegal search. We reverse and remand for further proceedings.

I

[¶ 2] On July 12, 2006, law enforcement applied for a search warrant for Kieper's residence from a district court judge, and Special Agent Ben Leingang of the North Dakota Bureau of Criminal Investigations testified in support of the application. Leingang testified he has four and a half years of law enforcement experience, including training specifically related to narcotics and narcotics identification. Leingang testified that law enforcement officers collected trash placed on the curb for pickup in front of Kieper's residence on July 12, 2006. The officers searched

the trash and found two butter knives with black burn marks and white residue, a baggie corner, and two pieces of mail with Kieper's name and address. The residue on the knives could not be field tested, but Leingang testified that in his training and experience drug users use metal devices, such as butter knives, as tools to help ingest the narcotic by placing the narcotic on top of the knife, applying a heat source to the bottom of the knife, and ingesting the fumes from the heated narcotic. Leingang testified that in his training and experience, baggie corners may be used to package narcotics by placing the narcotic in the little baggie and twist-tying it, however he did not say whether the baggie corner found in the trash showed signs of being twist-tied. Leingang did not testify about what type of housing Kieper lives in, whether the trash was placed in closed garbage bags, whether the bags were in garbage cans, or whether the evidence the officers believed was related to drug activity was found in the same container as the mail. Leingang was asked why law enforcement collected and searched the trash at Kieper's house, and he said, "[w]e received information from the last few years, we received information from a confidential informant, we received information from two unanimous [sic] sources, we received information from Parole and Probation, and have also received information from the Bismarck Police Department on a Jarrett Kieper in regards to distributing narcotics." The judge found the information presented established probable cause and issued a search warrant.

[¶3] Law enforcement executed the warrant on July 19, 2006, and found evidence of controlled substances. Kieper was arrested and charged with several drug related offenses.

[¶4] Kieper moved to suppress the evidence seized during the search of his house, arguing probable cause did not exist to issue the search warrant. After an evidentiary hearing, the district court denied Kieper's motion, finding probable cause existed to issue the search warrant. Kieper pled guilty to possession of psilocybin, possession of marijuana, possession of psilocyn, and two counts of possession of drug paraphernalia, but reserved the right to appeal the denial of his motion to suppress.

## II

[¶5] Kieper argues the district court erred in denying his motion to suppress because there was insufficient evidence to support a finding of probable cause to issue the search warrant.

[¶6] The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and N.D. Const. Art. I, § 8, require that searches and seizures be reasonable and that warrants be issued only upon a showing of probable cause. Whether probable cause existed to issue a warrant is a question of law. *State v. Nelson*, 2005 ND 59, ¶ 3, 693 N.W.2d 910. We review the validity of the search warrant independent of the district court's decision, and we only consider the information contained in the affidavit or application for issuance of the warrant. *State v. Schmalz*, 2008 ND 27, ¶ 13, 744 N.W.2d 734. " 'We defer to a magistrate's determination of probable cause so long as a substantial basis for the conclusion exists, and we resolve doubtful or marginal cases in favor of the magistrate's determination.' " *State v. Ebel*, 2006 ND 212, ¶ 12, 723 N.W.2d 375 (quoting *State v. Stewart*, 2006 ND 39, ¶ 6, 710 N.W.2d 403).

[¶7] Probable cause exists " 'if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contra-

band or evidence sought probably will be found in the place to be searched.'" *Nelson*, 2005 ND 59, ¶ 3, 693 N.W.2d 910 (quoting *State v. Corum*, 2003 ND 89, ¶ 22, 663 N.W.2d 151). Probable cause exists if it is established that certain identifiable objects are probably connected with criminal activity and will probably be found at the present time at an identifiable place. *Nelson*, at ¶ 3. The information used to establish probable cause should be considered together and not in a piecemeal fashion. *Id.* "We apply the totality-of-the-circumstances test to review whether information before the magistrate was sufficient to find probable cause, independent of the [district] court's findings." *State v. Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912. "[T]here must be a nexus between the place to be searched and the contraband sought, and circumstantial evidence may be enough to establish the nexus." *Nelson*, at ¶ 17. However, "[m]ere suspicion criminal activity is taking place, which may warrant further investigation, does not rise to the level of probable cause to search." *Ebel*, 2006 ND 212, ¶ 14, 723 N.W.2d 375.

[¶ 8] In *State v. Thieling*, 2000 ND 106, ¶ 2, 611 N.W.2d 861, a search warrant for Thieling's home was issued based on information that persons associated with drug activity had recently visited the home; items associated with drug activity were found in Thieling's trash, including altered baggies and small pieces of plastic and tin foil; mail in the trash bags indicated the items came from Thieling; and trash had not been placed on the curb since law enforcement officers searched the trash bags two weeks before applying for the warrant. Thieling argued the information presented to the magistrate was insufficient to establish probable cause and this Court agreed, concluding the evidence suggesting drugs or contraband would be found in the home was tenuous and did not

provide a substantial basis for the magistrate's finding of probable cause. *Id.* at ¶ 13.

[¶ 9] However, in *Schmalz*, 2008 ND 27, 744 N.W.2d 734, this Court concluded there was a sufficient factual basis to issue a search warrant based on an officer's testimony that law enforcement had received "intel" that Schmalz was involved in drugs, and testimony that officers searched Schmalz's trash and found a paper towel with what the officer believed was burnt marijuana residue, packaging tape and cellophane packaging that smelled of marijuana, and mail addressed to Schmalz. This Court said the information that Schmalz was involved in drugs was not sufficient to sustain a finding of probable cause, but the State did not exclusively rely on the "intel" in requesting the warrant. *Id.* at ¶ 14. We also said the facts about the trash search were thin and presented a questionable nexus to tie Schmalz to the suspected contraband, because it was not clear whether the drug evidence and mail were found together or separately in a single bag or can. *Id.* at ¶ 16. We concluded this was a marginal or doubtful case, but affirmed the magistrate's decision because there was a sufficient factual basis to issue a search warrant based on the officer's testimony regarding his training and experience, the smell of marijuana on all three pieces of evidence, and the residue that looked like burnt marijuana. *Id.* at ¶ 21. "The mere smell of marijuana, as detected by a trained and experienced officer, has been held by this Court to create a sufficient factual basis upon which to establish probable cause." *Id.* at ¶ 20. The distinguishing factor in *Schmalz* is the dark colored residue the officer identified as burnt marijuana, and the smell of marijuana found on the residue, cellophane packaging, and packaging tape.

[¶ 10] The present case is like *Thieling*, because the evidence that drugs would be found in Kieper's house was minimal. The evidence in this case consisted only of common household items and did not greatly raise the degree of suspicion. "The relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Thieling*, 2000 ND 106, ¶ 9, 611 N.W.2d 861 (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The butter knives with black burn marks and white residue may raise some suspicion because of their altered state, but they do not raise a high degree of suspicion because they are common household items and there was no evidence the residue on the knives was drug residue. *See Thieling*, at ¶ 9 n. 2 (drug residue found in garbage may be sufficient to support a finding of probable cause). The altered baggie may also raise more suspicion than an unaltered baggie, but baggies are intended to be used for packaging items and a baggie corner is consistent with packaging. *Id.* at ¶ 9. The baggie corner found in Kieper's trash may have been enough for probable cause to believe Kieper was packaging something, but there was no evidence Kieper was packaging illegal drugs. *See Thieling*, at ¶ 9. The evidence from the trash does not raise a high degree of suspicion and adds little to the probable cause analysis.

[¶ 11] Furthermore, the facts surrounding the trash search are limited. The search warrant application and supporting testimony did not contain information describing Kieper's residence, whether trash belonging to others may be placed in this location, whether the evidence was found in a trash bag, or whether the alleged contraband was found in the same bag as the mail. The information provided to the magistrate to show a nexus between the alleged contraband and Kieper's residence is tenuous. *See Schmalz*, 2008 ND 27, ¶ 16, 744 N.W.2d 734.

[¶ 12] Kieper contends Leingang's testimony explaining the trash was searched based on information from various sources over the last few years indicating Kieper was distributing narcotics does not support probable cause because there was no evidentiary support for the allegations. "Sufficient information, rather than 'bare bones' information must be presented to the magistrate'; 'an affidavit expressed in conclusions without detailing underlying information is insufficient for probable cause.'" *Thieling*, 2000 ND 106, ¶ 11, 611 N.W.2d 861 (quoting *State v. Rangeloff*, 1998 ND 135, ¶ 19, 580 N.W.2d 593). Leingang did not disclose the names of the informants or what specific information law enforcement had received from each of the informants. The testimony about information law enforcement received regarding Kieper distributing narcotics was merely a conclusion without detailed underlying information and does not sustain a finding of probable cause. *See Schmalz*, 2008 ND 27, ¶ 14, 744 N.W.2d 734.

[¶ 13] When all of the evidence presented to the issuing magistrate is considered as a whole, the information may have been sufficient to raise a suspicion that criminal activity was taking place, which may warrant further investigation, but it was not sufficient to establish probable cause to issue a search warrant. We conclude Leingang's testimony in support of the application for a search warrant does not provide a substantial basis for the magistrate's conclusion that there was probable cause to issue a search warrant for Kieper's residence. The search of Kieper's residence was illegal under the federal and state constitutions, and the

evidence seized during the search must be suppressed.

## III

[¶ 14]   The State contends that if probable cause did not exist to support the search warrant, the evidence should not be suppressed because the good faith exception to the exclusionary rule applies and no evidence has been presented that Leingang acted improperly or that the magistrate failed to act in a detached and neutral manner.

[¶ 15]   The United States Supreme Court recognized the good faith exception in *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405 (1984), when it held evidence should not be excluded when an officer has acted in good faith upon objectively reasonable reliance on the magistrate's probable cause determination. In applying the good faith exception, the court must determine " 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " *State v. Herrick,* 1999 ND 1, ¶ 15, 588 N.W.2d 847 (quoting *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405). Suppression remains an appropriate remedy in four situations:

> (1) when the issuing magistrate was misled by false information intentionally or negligently given by the affiant; (2) when the magistrate totally abandoned her judicial role and failed to act in a neutral and detached manner; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a reasonable law enforcement officer could not rely on a facially deficient warrant.

*State v. Dodson,* 2003 ND 187, ¶ 19, 671 N.W.2d 825 (quoting *Herrick,* at ¶ 15).

[¶ 16]   The State did not argue in the district court the good faith exception applied. Rather, the State raised the issue for the first time on appeal. Kieper argues the State waived the issue by failing to raise it below. It is well-established that "[i]ssues which are not raised before the [district] court, including constitutional issues, will not be considered for the first time on appeal." *State v. Blumler,* 458 N.W.2d 300, 303 (N.D.1990). While the question of whether the good faith exception should apply is based on an objective standard of whether a reasonable officer would have known the search was illegal, it still requires the court have sufficient facts to make a decision and those facts may be lacking if we allow the State to make the argument for the first time on appeal. *See Higgason v. Superior Court,* 170 Cal. App.3d 929, 216 Cal.Rptr. 817, 823–24 (1985). Furthermore, the defendant will be denied the opportunity to present evidence in response, to cross-examine witnesses on testimony that may support the new theory, or to argue before the district court the theory's invalidity or inapplicability. *Id.*

[¶ 17]   We will not decide whether the good faith exception applies because the State failed to raise the issue in the district court and it was not properly preserved for review.

## IV

[¶ 18]   We conclude probable cause did not exist to issue a search warrant. We reverse the criminal judgment, and remand the case to the district court to allow Kieper to withdraw his guilty plea.

[¶ 19] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

DALE V. SANDSTROM, J., I concur in the result.

CROTHERS, Justice, specially concurring.

[¶ 20] I concur in the result reached by the majority, but respectfully disagree with their analysis.

[¶ 21] I wrote separately in *State v. Schmalz* because probable cause was not established and the search was sustainable, if at all, upon establishing the good-faith exception. 2008 ND 27, ¶ 31, 744 N.W.2d 734 (Crothers, J., concurring in the result). So too, I agree the search here only can be sustained on good faith. But the State did not raise that issue below. Majority opinion at ¶¶ 14–17.

[¶ 22] I disagree with the majority that application of *Schmalz* and *State v. Thieling*, 2000 ND 106, 611 N.W.2d 861, should lead us to different conclusions. Both cases involved trash containing household items that could have been evidence of criminal activity. Both cases involved limited facts about the trash, and had an unreliable nexus between the trash and the residence sought to be searched. Both cases involved information provided by third parties that furnished little or no useful evidence supporting probable cause. But in one case this Court found probable cause and in the other case it did not. I believe these different holdings based on similar facts will result in law enforcement and reviewing magistrates having understandable difficulty determining why the warrant was sustained in *Schmalz* and deficient in *Thieling*. The analysis in this case does nothing to dissipate that confusion, but instead perpetuates the error which I believe was made in *Schmalz*. I therefore cannot join the majority's analysis in this case, but I do concur in the result they have reached.

[¶ 23] DANIEL J. CROTHERS, J.