2013 ND 126

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Daniel Evan WACHT, Defendant and Appellant.**

**No. 20120320.**

Supreme Court of North Dakota.

July 18, 2013.

Marina Spahr (argued), Assistant State's Attorney, Carrington, ND, and Jonathan R. Byers (appeared), Assistant Attorney General, Office of Attorney General, Bismarck, ND, for plaintiff and appellee.

Steven D. Mottinger, Fargo, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶1] Daniel Evan Wacht appealed from a criminal judgment entered after a jury found him guilty of murder. We affirm.

## I.

### A.

[¶2] Kurt Douglas Johnson was reported missing to Griggs County Sheriff Robert Hook on January 4, 2011 by his cousin, Murray Stokka. After determining that Johnson was last seen on December 31, 2010 with Daniel Evan Wacht, Sheriff Hook obtained a search warrant to search Wacht's van on January 5, 2011 at 12:25 a.m. The evidence presented to the district judge to obtain the search warrant was

contained in affidavits from Sheriff Hook and Bureau of Criminal Investigation Agent Arnie Rummel.

[¶ 3] Sheriff Hook's affidavit set forth the events leading up to the night Johnson was reported missing. Murray Stokka, Johnson's cousin, contacted Hook to report that Johnson was missing. The last time anyone had seen Johnson was at the Oasis bar in Cooperstown on December 31, 2010. Johnson appeared to be drunk and was causing a disturbance at the bar. The bartender threatened to call the sheriff. Wacht was also at the Oasis, and offered to give Johnson a ride home. Tim Vincent, later identified as a patron of the Oasis bar on December 31, 2010, told the sheriff that he helped Wacht get Johnson out of the bar, and Wacht proceeded to throw Johnson into the van. Johnson was never seen again. Johnson's family thoroughly searched his house for him, including inside the cupboards, but did not find him. Sheriff Hook also searched Johnson's house and did not find him. The person who does Johnson's snow removal said there were no footprints in the snow when he came to shovel on January 1, 2011. Wacht is employed by Sheyenne Tooling in Cooperstown, and Tim James, his supervisor, stated Wacht had not reported for work since December 23, 2010 because his mother had died in California. An informant said Wacht told the informant he was shopping in Fargo. Sheriff Hook called Wacht's cell phone and it sounded like Wacht was driving. Wacht stated that he dropped Johnson off at the Fish Bowl bar in Cooperstown at 11:30 p.m. on December 31, 2010, and "[n]o one saw me do it." Ron Berge Jr. stated that Wacht told him Wacht took Johnson to Wacht's own home and was there for some time while Johnson was passed out in Wacht's van, then dropped Johnson off at the Fish Bowl bar. No one saw Johnson at the Fish Bowl bar that night. Sheriff Hook spoke with his deputies and they stated they received a call requesting assistance because Wacht was stuck in a ditch. Wacht reported he had been at his buddy's place, gesturing toward the Richard Sutcliffe farm. Wacht adamantly refused to allow the deputies anywhere near his van, which was the same van where Johnson was last seen. The deputies gave Wacht a ride home.

[¶ 4] Agent Rummel's affidavit recited Wacht's criminal background since 2001, including charges of grand theft auto, burglary, force with a dangerous weapon, use of a firearm or animal during a theft, taking a vehicle without owner's consent, possession and transport of a controlled substance, parole and probation violations, felon in possession of a firearm, willful discharge of a firearm with gross negligence, and manufacture or possession of a dangerous weapon. Agent Rummel also stated Wacht had an outstanding warrant in California for probation violation, and that he believed Wacht has violent tendencies.

B.

[¶ 5] After staking out Wacht's home and work, law enforcement arrested Wacht pursuant to the California warrant outside Sheyenne Tooling on the morning of January 5, 2011. When Wacht was arrested, he was in possession of a stolen Glock 9mm handgun. Wacht was interviewed by Agent Rummel, and he admitted Johnson was in his van on New Year's Eve. Wacht also stated that he believed he had a Second Amendment right to possess firearms regardless of his probation conditions. The police towed Wacht's van to a local body shop and sealed it to preserve the evidence. When they searched the van, they found an envelope containing five spent rifle shells and ammunition for a rifle. Agent Rummel then applied for a search warrant to search Wacht's home for

firearms, weapons, and ammunition. His affidavit stated they found ammunition for a rifle in Wacht's van, that Wacht had told officers he believed he had a constitutional right to possess firearms despite his criminal convictions and probation conditions, and that an informant told Rummel about an incident in which Wacht had shot through a coffee table inside Wacht's house. The affidavit also stated that Wacht was under surveillance from the time he left his home to the time he arrived at work, and that Wacht admitted that he brought a gun to work on a regular basis. The search warrant was granted.

### C.

[¶ 6] Law enforcement searched Wacht's house, discovering more firearms and ammunition. They also found a blood stained couch cushion in a garbage bag in Wacht's laundry room. Law enforcement applied for and obtained another warrant to search the house for evidence of Johnson. That search uncovered Johnson's decapitated head buried in the crawl space under Wacht's house, as well as a bullet casing, bloody pillow, and several items with Johnson's DNA on them. Wacht was charged with the murder of Kurt Johnson.

[¶ 7] Before trial Wacht moved to suppress the fruits of the search of his van and home, arguing the warrants were not based on probable cause. The district court found Ron Berge Jr.'s statement was false because he had not actually spoken to Wacht, and the claim that Wacht had not let the deputies go anywhere near his van was misleading. The district court also found paragraph 27 of Sheriff Hook's affidavit, stating "That Daniel Evan Wacht also told your affiant without being prompted that 'No one saw me do it'" was false and misleading. The district court struck these three statements from the affidavit, and considered whether probable cause existed to search Wacht's van without them. From the affidavit for the first warrant to search Wacht's house, the district court struck the paragraph describing Wacht shooting a coffee table in his house. The district court denied the motion to suppress, finding all three search warrants were based on probable cause.

### D.

[¶ 8] The State filed a notice of its intention to introduce several pieces of evidence including: testimony about Wacht's involvement in a gang as well as his comments on December 18, 2010 that he would kill someone or blow something up to make a statement for the gang; an incident where Wacht asked a person to hold a gun to his head and become a gang member; Wacht's statements about the idea of shooting a police officer during a traffic stop; evidence that Wacht had repairs and maintenance performed on his Glock 9mm handgun in the month before Johnson's murder; and evidence of Wacht's previous convictions in California. The district court allowed the statements about Wacht's gang membership and wanting to kill someone, as well as the evidence of the work done on Wacht's handgun. Evidence of holding a gun to a person's head was excluded, as well as Wacht's criminal record unless Wacht testified. The discussion about shooting the police officer was allowed, but was not presented at trial. The State and the defense agreed that evidence of the warrant on which Wacht was ultimately arrested was admissible.

[¶ 9] Wacht was tried before a jury and convicted of the murder of Kurt Johnson. He was sentenced to life in prison.

### II.

[¶ 10] Wacht argues evidence obtained in the search of his van should be

suppressed because the warrant to search his van was not based on probable cause. "This Court will affirm a district court's decision on a motion to suppress evidence if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *State v. Sommer*, 2011 ND 151, ¶ 8, 800 N.W.2d 853 (internal quotations omitted). Determining whether the facts found by the district court meet a legal standard is a question of law fully reviewable on appeal. *Id.*

■■ [¶ 11] The right to be free from unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 8 of the North Dakota Constitution. "If an individual has a reasonable expectation of privacy, the government must acquire a search warrant unless the search fits within a recognized exception to the warrant requirement." *Sommer*, 2011 ND 151, ¶ 9, 800 N.W.2d 853.

■■ [¶ 12] "When determining whether there is probable cause, the evidence should not be considered individually, but as a collective whole." *State v. Doohen*, 2006 ND 239, ¶ 13, 724 N.W.2d 158.

> Although each bit of information . . ., by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers . . . which is not weighed in individual layers but in the laminated total.

*Id.* (quoting *State v. Nelson*, 2005 ND 11, ¶ 21, 691 N.W.2d 218).

■■ [¶ 13] " 'A grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting *U.S. v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)). "[C]ourts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Id.*

[¶ 14] Wacht argues the fact that Johnson was last seen with him in his van is not enough to establish probable cause to search his van. However, this is but one layer of the laminated total provided in the affidavit. Wacht was at the Oasis bar with Johnson. Wacht left the bar with Johnson in his van. To the best of the Sheriff's knowledge, no one had seen Johnson since. Nobody had seen Johnson at the Fish Bowl bar despite Wacht's claim that he left Johnson there. Wacht had a significant criminal history, including multiple charges concerning weapons, multiple theft charges, and at least one violent crime. These facts establish the probability that the police will find evidence of certain objects connected to criminal activity in Wacht's van.

[¶ 15] Wacht also argues that several statements in Sheriff Hook's affidavit were unreliable because they were either unattributed, or the affidavit did not include information about the informant "on which the magistrate could have weighed the reliability of the information." He argues that Ron Berge Jr.'s statements were unreliable because they were not based on personal knowledge. The district court excluded Berge's statements from its probable cause consideration because it found them to be false. Excluding Berge's statement we conclude probable cause still existed to issue a search warrant for Wacht's van.

[¶ 16] Wacht argues that the information given by Murray Stokka, Tim Vincent, and the person that does Johnson's snow removal is unreliable because the affidavit did not include information about their reliability or reputation. "We have presumed the reliability of citizen informants and said their reliability should be evaluated from the nature of their report, their opportunity to observe the matters reported, and the extent to which it can be verified by independent investigation." *State v. Hage*, 1997 ND 175, ¶ 16, 568 N.W.2d 741. "The basis of knowledge and veracity of an informant are relevant, but are flexibly evaluated so that a strength in one aspect can balance deficiencies in the other." *Id.* at ¶ 17.

[¶ 17] Each of these informants is a citizen informant and is presumed reliable. Wacht does not point to any specific issues with the reliability of any of the information these informants proffered. Each informant's information was based on personal knowledge and eyewitness account, rather than hearsay or reputation. Further, the information each gave was verified by other sources. Stokka's missing person report was verified by both the snow removal person's information that there were no footprints in the snow leading to Johnson's house as well as Sheriff Hook's search of Johnson's house. Vincent's assertion that Wacht left the Oasis bar with Johnson in his van was verified by Wacht himself.

[¶ 18] Wacht argues that "[s]tatements attributed to parties other than the actual affiant must be accompanied by sufficient information on which a magistrate can determine their reliability." He cites *State v. Dodson*, 2003 ND 187, ¶ 14, 671 N.W.2d 825, to support this position. However, the information required is the "nature of their report, their opportunity to observe the matters reported, and the extent to which it can be verified by independent investigation," rather than information about the informant's reputation. *Hage*, 1997 ND 175, ¶ 16, 568 N.W.2d 741. In *Dodson*, the affidavit of probable cause included a report from a citizen informant that Dodson "does more that his share of buying and selling methamphetamine." *Dodson*, at ¶ 13. This Court found "there was no information provided from which the magistrate could determine Shamra Campbell's reliability." *Id.* at ¶ 15. The affidavit did not include any information about Shamra Campbell's basis for knowledge. *Id.* The affidavit did not say whether Campbell personally saw Dodson buy and sell methamphetamine, or if she was simply relaying Dodson's reputation. *Id.* at ¶ 14. In this case, reports of the informants in the affidavit were supported by the requisite information for the magistrate to determine their reliability.

[¶ 19] The warrant to search Wacht's van was supported by probable cause. The district court did not err by refusing to suppress evidence found in Wacht's van.

### III.

[¶ 20] Wacht argues there was no probable cause for the warrants to search his home because there is no nexus between his home and firearms. "In order to justify the search [of a house] there must have been a nexus between the house to be searched and the evidence sought." *State v. Mische*, 448 N.W.2d 415, 419 (N.D. 1989) (quoting *State v. Metzner*, 338 N.W.2d 799, 804 (N.D.1983)). Wacht argues that information in the affidavit about shooting a coffee table in his home is unreliable because it comes from an anonymous informant without any information to weigh its reliability. The district court found this information was unreliable and disregarded it. However, the district court also found that the affidavit estab-

lished Wacht had left his home with a handgun earlier that morning. Police had Wacht under surveillance from the time he left his house in the morning until he arrived at work. Wacht's possession of a firearm at his house provides a sufficient nexus between his home and firearms to make it probable that other firearms would be stored in his home. This nexus, combined with the other facts recited in Rummel's affidavit, was sufficient to support the finding that probable cause existed to search Wacht's house for evidence of other firearms.

■ [¶ 21] Search of Wacht's home under the first warrant revealed a couch cushion with blood on it in a trash bag in Wacht's laundry room, as well as blood on other areas of the couch. According to Agent Rummel's affidavit for a warrant to search for evidence of Johnson in Wacht's home, the blood appeared to have a fresh red color, and was more than a minor injury would produce. Rummel also included the information from the earlier affidavits about the circumstances leading up to and after Johnson's disappearance. *See State v. Mische*, 448 N.W.2d at 418 (stating that an affidavit of probable cause may incorporate previous affidavits). This was enough to establish probable cause to search Wacht's home for evidence of Johnson or a crime perpetrated upon Johnson.

### IV.

[¶ 22] Wacht argues five separate pieces of evidence or testimony that should have been excluded were admitted under N.D.R.Ev. 404(b) as proof of motive, plan, preparation, and intent. Three of these items were not presented at trial, and therefore could not have affected the outcome of the trial: James Gronneberg's testimony about holding a gun to his head to become a gang member, Russell Chamberlain's testimony about the idea of shoot-

ing a police officer at a traffic stop, and Wacht's criminal history from California. *See State v. Just,* 2006 ND 225, ¶ 7, 723 N.W.2d 541 (stating harmless error "prevents setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial" (internal quotations omitted)).

■ [¶ 23] Wacht also challenges the admissibility of evidence of a conversation with Jason Bolstad about "blowing up something or killing someone to make a statement for the gang, and shooting guns," as well as evidence that Wacht sought to have work done on his gun in December of 2010. Wacht argues there was no other purpose to admit this evidence except to show he has a violent character, and therefore the evidence should be excluded under N.D.R.Ev. 404(b). A trial court's evidentiary rulings are reviewed under the abuse of discretion standard. *State v. Christensen,* 1997 ND 57, ¶ 5, 561 N.W.2d 631. "A trial court abuses its discretion when it acts in an arbitrary or capricious manner, or misapplies or misinterprets the law." *Id.*

[¶ 24] The district court did not abuse its discretion by allowing evidence of the conversation. The district court found the conversation was substantive evidence of the crime committed, and therefore was not subject to Rule 404(b). Rule 404(b) was intended to exclude "evidence of a wholly separate and independent crime." *Christensen* at ¶ 8. "Rule 404(b) was not intended . . . to exclude evidence of activity in furtherance of the same criminal activity." *Id.* The conversation took place on December 18, 2010, only a few weeks before Johnson was murdered. It is evidence that he intended to murder someone, and is "evidence of activity in furtherance of the same criminal activity." *Id.* In any event, the evidence would have been admissible under Rule 404(b) as proof of

motive, plan or preparation. *See State v. Alvarado*, 2008 ND 203, ¶ 13, 757 N.W.2d 570, (stating "[e]ven if the trial court had gone through a N.D.R.Ev. 404(b) analysis, the evidence still could have been admitted"). The evidence was properly admitted.

[¶ 25] Nor did the district court abuse its discretion by admitting the evidence of the work done on Wacht's gun. The district court found this evidence was admissible under Rule 404(b) because it showed Wacht's plan and preparation to commit the crime charged, and that the probative value outweighed the risk of unfair prejudice. Rule 404(b), N.D.R.Ev., states "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evidence of other acts, crimes, or wrongs is admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The evidence of Wacht seeking work on his gun in December of 2010 shows that in the same time period he was talking about killing someone to make a statement for a gang, he was also making sure his gun was in working condition. This shows his readiness and preparation to commit the crime charged. The district court did not abuse its discretion by admitting this evidence.

### V.

[¶ 26] Wacht argues there was insufficient evidence to convict him of the murder of Kurt Johnson. "This [C]ourt will reverse a criminal conviction only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Barendt*, 2007 ND 164, ¶ 9, 740

N.W.2d 87. The evidence of Wacht's guilt was overwhelming. Wacht was the last person seen with Johnson. DNA evidence that could not exclude Kurt Johnson was found on a spent 9mm casing that was fired from Wacht's gun, the cushion found in Wacht's laundry room, Wacht's sofa matching the cushion, a boot in Wacht's home, the exterior of a pair of gloves, a sponge in a garbage bag in Wacht's laundry room, and a belt suspected to be Johnson's. Wacht's DNA was found on the inside of the boots and the gloves. Johnson's decapitated head was found buried in the crawl space underneath Wacht's home. The jacket of a 9mm bullet was removed from the wound in Johnson's head. The bullet could have been fired from Wacht's firearm, and was consistent with ammunition that Wacht possessed for his 9mm Glock pistol. There was sufficient evidence for the jury to convict Wacht of murder.

### VI.

[¶ 27] Wacht argues his Sixth Amendment right to an impartial jury was violated. "We review a district court's decision on whether to excuse a juror for cause under an abuse of discretion standard." *State v. Jaster*, 2004 ND 223, ¶ 8, 690 N.W.2d 213. Of the five members of the jury Wacht challenges on appeal, he challenged one for cause at trial. That juror was challenged for cause at trial because one of his siblings was murdered. He was also distantly related to Johnson through marriage, but did not know Johnson personally. The juror's answers to questions did not indicate he held any actual or implied bias against Wacht. Furthermore, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *State v. Olson*, 290 N.W.2d 664, 667 (N.D.1980) (quoting *Irvin*

*v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). The district court did not abuse its discretion by refusing to disqualify this juror.

[¶ 28] Because he did not challenge the other jurors for cause, Wacht must show obvious error under N.D.R.Crim.P. 52(b), which allows this Court to correct obvious errors even if they were not raised to the trial court. Wacht challenges the other jurors because they all expressed some preconceived notion of his guilt. Each juror gave answers in voir dire by which the judge could have concluded the juror would be able to lay aside his or her impression and render a verdict based on the evidence. An alleged error is not obvious error unless it is a clear deviation from the applicable legal rule. *State v. Erickstad*, 2000 ND 202, ¶ 22, 620 N.W.2d 136. The trial court did not clearly deviate from the applicable legal rule. Wacht's right to an impartial jury was not violated.

[¶ 29] We hold the remaining arguments raised in the Supplemental Brief of Indigent Defendant are without merit.

## VII.

[¶ 30] We affirm the criminal judgment finding Daniel Evan Wacht guilty of murder.

[¶ 31] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.